REVERSED AND REMANDED.

DAN MEYER, APPELLANT, V. BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, APPELLEE.

510 N.W.2d 450

Filed June 22, 1993.   No. A-91-942.

Stanford L. Sipple, of DeCamp Legal Services, P.C., for appellant.

Fredric H. Kauffman and Terry R. Wittler, of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

HANNON, IRWIN, and MILLER-LERMAN, Judges.

IRWIN, Judge.

Appellant, Dan Meyer, filed an action in the district court for Lancaster County pursuant to Nebraska public meeting law, Neb. Rev. Stat. §§ 84-1408 through 84-1414 (Reissue 1987 & Supp. 1989), challenging the right of appellee, the Board of Regents of the University of Nebraska (Board), to undertake a closed-session discussion at a July 31, 1989, emergency meeting called for the purpose of "evaluat[ing] and consider[ing] the employment status of the President [of the University of Nebraska]" and challenging the propriety of the closed-session discussion.

## BACKGROUND

In this case, there were no disputed issues of fact, although the parties have drawn different inferences from the stipulated facts. Meyer is a resident of Lancaster County, Nebraska, and a citizen of the State of Nebraska. See § 84-1414(3). The Board is a duly constituted and elected public body of the State of Nebraska, is the governing body for the University of Nebraska, and is a public body as defined in § 84-1409(1).

In the spring of 1989, the Board undertook to evaluate Dr. Ronald Roskens' performance as president of the university. Dr. Roskens was advised that a review of his role was to be made, and he was encouraged to visit with the regents individually regarding his job performance. On May 12, 1989, the Board convened in a scheduled meeting and, by a rollcall vote, adopted a motion to hold a closed session to consider "personnel matters which require closed session discussion in order to prevent needless injury to the persons involved." See § 84-1410. During this closed session, the Board began its discussion regarding Dr. Roskens. Individual members of the Board had concerns about Dr. Roskens' performance. Dr. Roskens had indicated publicly as well as privately that he was

planning to leave his position, and his departure was an issue confronting the Board. The Board reconvened in open session without completing its discussion of this subject during the closed session.

On June 23, the Board convened at its next scheduled meeting. By a rollcall vote, the Board adopted a motion to hold a closed session to consider "personnel matters which require closed session discussion in order to prevent needless injury to the persons involved," see § 84-1410, and the Board continued its performance evaluation of Dr. Roskens. The record reveals that Dr. Roskens had lost the confidence of the Board. The executive subcommittee was directed to convey the Board's concerns to Dr. Roskens and to try to reach a mutually beneficial agreement whereby Dr. Roskens would vacate the office of president. After the June 23 meeting, the executive subcommittee of the Board, consisting of Regents Nancy Hoch, Donald Fricke, and Margaret Robinson, met privately with Dr. Roskens twice to discuss his employment with the university.

On July 21, the Board convened for its next scheduled meeting and, by a rollcall vote, adopted a motion to hold a closed session to consider "personnel matters which require closed session discussion in order to prevent needless injury to the persons involved." See § 84-1410. During this closed session, the executive subcommittee reported to the Board concerning its discussions with Dr. Roskens. On July 22, Regent Hoch and Regent Kermit Hansen met privately with Dr. Roskens to discuss his tenure as president of the university and the possible circumstances under which he would vacate the office. The Board had requested a definitive position from Dr. Roskens concerning his tenure in office and wished to reach an agreement with Dr. Roskens in the following 3-week period. Dr. Roskens advised Regents Hoch and Hansen that he would be unable to consider an agreement, as he was on his way to Japan for 1 week and then to Minnesota for a 2-week vacation.

On July 31, after his return from Japan and immediately prior to his scheduled departure for Minnesota, Dr. Roskens again met with Regents Hoch and Hansen. At that time, Dr. Roskens presented a proposal which Regent Hoch felt should

be conveyed to the entire Board. Regent Hoch, as chairperson of the Board, asked the university corporate secretary to issue notice of an emergency meeting of the Board to convene at 7 o'clock that evening in Varner Hall on the university campus for the express purpose of evaluating and considering the employment status of the president. Advance public notice was given to the media prior to the meeting. The public notice stated: "The purpose of such meeting shall be to evaluate and consider the employment status of the President." Dr. Roskens knew that the meeting had been called, and he was aware of its purpose. The Board convened at 7:07 p.m. for the emergency meeting. While the Board was in session, Dr. Roskens and his counsel were in Dr. Roskens' office, which was also located in Varner Hall. At 7:10 p.m., the Board voted 7 to 1 to go into closed session. Dr. Roskens did not ask to be present during the closed session, nor did he request that his employment status be discussed in open session.

In the closed session, the executive subcommittee relayed Dr. Roskens' proposal to the Board, and the Board then discussed the proposal at length. Negotiations were carried on between the Board, meeting in closed session, and Dr. Roskens and his counsel, who were in Dr. Roskens' office. The Board's counsel, Richard Wood, acted as an intermediary. The negotiations proceeded until the parties had reached a preliminary understanding.

Once it became apparent during the negotiations that Dr. Roskens would be vacating the office of president, the Board felt it necessary to deal with the question of who would take over the immediate leadership of the university, as they felt that continuity was "critical." The record reveals that "continuity of leadership at the level of presidency of the university" was a grave concern. Preventing the creation of a "vacuum in [this] position" and not having someone "in a position to be able to take up the reins" were crucial. Dr. Martin Massengale, chancellor of the university, was contacted, and after discussions and negotiations, it was agreed that he would take over as interim president.

Following the closed session, the Board reconvened in open session. At that time, a written proposal was presented to the

Board, and the Board, by a vote of seven in favor and one opposed, adopted a motion to approve an agreement with Dr. Roskens, the terms of which are contained in the minutes of the Board's meeting. See § 84-1411(3). Dr. Roskens was present during this portion of the open session. The Board also adopted a motion that Dr. Massengale be appointed interim president of the university effective August 1, 1989, and continue to occupy the office of chancellor of the university.

On August 23, Dr. Roskens and the Board executed a written agreement that was prepared in conformance with Dr. Roskens' proposal of July 31. At its regularly scheduled meeting on September 8, the Board, acting in open session, adopted a series of motions "ratifying" its previous actions concerning Dr. Roskens and ratifying the "Agreement and Mutual Release" executed by the Board and Dr. Roskens, which was dated August 23. The various votes to go into closed session, as described above, were entered in the respective minutes of the Board for each meeting. See § 84-1410(1).

Appellant challenged the right of the Board to undertake a closed-session discussion during the July 31 emergency meeting called for the stated purpose of evaluating and considering the employment status of the president of the university and challenged the propriety of the closed-session discussion. He wrote a letter to the Attorney General's office regarding a possible violation of the public meeting law. The Attorney General's office, under then Attorney General Robert Spire, prepared a memorandum dated October 12, 1989, concluding that there had been no violation. Appellant filed an action in district court on November 17, 1989. The prayer was that "the decision made in the open session immediately following the closed session and based upon the discussion at the closed session be declared void or taken in violation of the provisions of Neb. Rev. Stat. §§ 84-1408 to 1413 (1982) as provided in section 84-1414" and that appellant be awarded attorney fees and court costs.

When the suit was filed, it named the Board as a defendant, as well as the individual members of the Board. Service of process was not obtained against any of the individuals. An amended petition was filed adding Drs. Roskens and

Massengale as defendants. Demurrers to the amended petition, based upon the expiration of the applicable limitations period, were filed on behalf of Drs. Roskens and Massengale and were sustained. Appellant elected to stand upon his pleading, and as a consequence, the action as to the added defendants was dismissed.

The issue presented for determination by the district court was whether the Board's action in holding a closed-session discussion on July 31, 1989, was in contravention of Nebraska public meeting law. The district court found that there was no violation of the public meeting law and dismissed appellant's amended petition.

## ASSIGNMENTS OF ERROR

Appellant asserts that the district court erred in finding that (1) the employment status of Dr. Roskens and the choice of his interim successor were proper subjects for Board discussion in closed session; (2) the employment status of Dr. Roskens and the choice of his interim successor were, on July 31, 1989, bona fide emergencies to justify the Board's holding an emergency meeting; (3) the Board confined the subject matter of its closed-session discussion on July 31 to those topics which the Board stated required secrecy; (4) the Board confined the subject matter of its emergency meeting on July 31 to those topics which the Board stated justified an emergency meeting; (5) the Board corrected any shortcomings with regard to the public meeting law when the Board later ratified its July 31 actions on September 8, 1989; and (6) the parties did not have a dispute proper for adjudication at the time of the trial of this case.

## STANDARD OF REVIEW

This case was tried as an equity case. In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *State v. Nebraska*

*Assn. of Pub. Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991).

## DISCUSSION

*Closed Session.*

Nebraska public meeting law reflects the Legislature's judgment of the appropriate balance between the public's interest in open discussion of governmental issues and the rights of individuals, such as state employees, to have their performance as employees considered in private if they so choose. Section 84-1410 provides, in pertinent part:

(1) Any public body may hold a closed session by the affirmative vote of a majority of its voting members if a closed session is clearly necessary for the protection of the public interest or for the prevention of needless injury to the reputation of an individual and if such individual has not requested a public meeting. *Closed sessions may be held for . . . such reasons as:*

. . . .

*(d) Evaluation of the job performance of a person when necessary to prevent needless injury to the reputation of a person and if such person has not requested a public meeting.*

. . . .

(2) The vote to hold a closed session shall be taken in open session. The vote of each member on the question of holding a closed session, the reason for the closed session, and the time when the closed session commenced and concluded shall be recorded in the minutes. The public body holding such a closed session shall restrict its consideration of matters during the closed portions to only those purposes set forth in the minutes as the reason for the closed session. The meeting shall be reconvened in open session before any formal action may be taken.

(Emphasis supplied.)

The amended minutes for the July 31, 1989, meeting show that the Board complied with the provisions of § 84-1410 as regards the closed session. An affirmative vote of the Board taken in open session preceded the closed session. The vote of

each member on the question of holding a closed session, the reason for the closed session, and the times when the closed session commenced and concluded were also contained in the amended minutes. The agreement between Dr. Roskens and the Board was voted upon after the meeting was reconvened. (The actions of the executive subcommittee are not covered by the public meeting law pursuant to § 84-1409, which provides that the public meeting law shall not apply to subcommittees of public bodies unless such subcommittees are holding hearings, making policy, or taking formal action on behalf of their parent body.)

The Board made a determination that public consideration of Dr. Roskens' employment status might result in needless injury to his reputation, which would be unnecessary if he were to vacate his office by agreement. Dr. Roskens knew that the Board was meeting on the evening of July 31 and was present in the building with his counsel. Dr. Roskens did not request that the discussion be carried out in public. Dr. Roskens and the university thereafter voluntarily executed a written agreement on August 23, 1989. The agreement, according to its express terms, merged all prior negotiations and considerations into its written provisions. In addition, the Board appointed Dr. Massengale as the interim replacement for Dr. Roskens.

Appellant argues that the appointment of an interim president was not a proper topic for closed-session discussion. However, it was appropriate for the Board to consider in closed session not only Dr. Roskens' resignation, but also the immediate steps the Board would take in response to that action. The Board considered continuity of leadership at the level of the presidency to be critical. The issues raised are interrelated, and it was appropriate that they be discussed together.

Courts have recognized that when the primary purpose of a closed session is authorized, any necessary discussion of incidental matters is also authorized. For example, in *Commercial Printing Co. et al v. Rush et al*, 261 Ark. 468, 549 S.W.2d 790 (1977), the Arkansas Board of Corrections went into closed session to discuss the disciplining of specific employees in connection with the death of an inmate. In that

closed session, the board also discussed inmate work assignments, several prison policies, various medical questions, and general harassment of inmates. The Arkansas Supreme Court affirmed the trial court's decision that the other discussions did not render the closed session illegal. The court stated that while the Arkansas public meeting law permitted executive session for, among other specific reasons, the purpose of discussing or considering discipline of a public employee, it was both logical and within the spirit of the law to note that discussion could of necessity deal with several areas which, taken out of the context of the total discussion, might be construed as improper subject matter for executive session.

In *State v. U.S.D. No. 305*, 13 Kan. App. 2d 117, 764 P.2d 459 (1988), the Kansas Attorney General claimed that a school board which met in closed session to discuss an investigation of several school administrators went beyond the valid purpose of a closed session when the board also discussed establishing an investigative committee and who should be appointed to such a committee. The court disagreed, stating that to segregate the topics into open and closed sessions would have been impractical if not impossible due to the focus on the four school administrators in both discussions, giving due consideration to their right to privacy.

Dr. Massengale was hired as *interim* president of the university. His hiring was connected to the termination of Dr. Roskens because a vacancy was created. In addition, there was a difficulty in dealing with Dr. Roskens. There is no violation of the public meeting law when the subject of the closed session falls within one of the express exclusions of § 84-1410. We determine that there was no violation of the public meeting law in the Board's holding a closed session during its July 31 meeting.

*Emergency Meeting.*

Section 84-1411 requires reasonable advance publicized notice of the time and place of each meeting of a public body. Subsection (3) of that statute states that "[w]hen it is necessary to hold an emergency meeting without reasonable advance public notice, the nature of the emergency shall be stated in the

minutes and any formal action taken in such meeting shall pertain only to the emergency."

As stated earlier, Dr. Roskens had declared, both publicly and privately, that he intended to leave the office of president of the university. Testimony revealed that the Board had lost confidence in the leadership of Dr. Roskens. Because of Dr. Roskens' self-imposed schedule, any further discussions would have been put off until mid-August. According to Regent Hoch's testimony, other members of the Board had contacted her and expressed concern that there be "a more prompt resolution of this problem" and the sentiment that "it should not be a problem for Dr. Roskens to make a stop to meet with us when he returned from Japan before he went on vacation." In less polite vocabulary, they felt that there was a problem with Dr. Roskens' performance and conduct and that he was evading them. It was at this time that Regent Hoch contacted Dr. Roskens in Tokyo and arranged a meeting for the morning of July 31. Regents Hoch and Hansen met with Dr. Roskens. Regent Hoch determined that Dr. Roskens had presented a proposal that she felt should be conveyed to the Board, i.e., she thought that the time was right to possibly reach a settlement with Dr. Roskens and that the Board should take advantage of the opportunity. As chairperson of the Board, she directed the corporate secretary to post notice of an emergency meeting for that evening. The notice was posted by early afternoon on July 31.

The stated purpose of the emergency meeting was "to evaluate and consider the employment status of the President." Since the results of the session and the negotiations with Dr. Roskens were uncertain at the time, a more detailed statement could not have been given. "There was no way of knowing at the beginning of the meeting how long negotiations would drag on, or what, if indeed anything, might result from these discussions." Brief for appellee at 31-32.

Appellee contends that the Board was faced with an emergency situation requiring immediate action because several of its members had lost confidence in the leadership provided by Dr. Roskens and that Dr. Roskens was willing to vacate his office *effective immediately* if certain requests were granted.

Dr. Roskens was in the Far East and was going to depart for Minnesota soon after his return from Japan. The Board was trying to shoot a moving target, and on July 31, the target stood still. Therefore, argues appellee, notice of the meeting was reasonable given the exigencies of the situation. We agree.

Section 84-1411 requires that complete minutes of an emergency meeting specifying the nature of the emergency and any formal action taken at the meeting be made available to the public by the end of the next regular working day. The minutes of the July 31 meeting were made available to the public within this timeframe. However, the attorney for the university noticed that the minutes did not contain a paragraph specifying the nature of the emergency meeting. Although it was apparent from the original minutes, on August 3, 1989, the original minutes were amended by the addition of the following paragraph:

> The nature of the emergency for this meeting was for the purpose of (1) reporting to the Board discussions between Regents Hoch and Hansen and President Roskens regarding Dr. Roskens' vacating the Office of President and settlement of his contract of employment rights, and (2) allowing the Board to take action on a proposed agreement with Dr. Roskens concerning these matters.

In the portion of the minutes of the July 31 meeting which reflected action taken after the Board reconvened in open session, it is stated that it was

> [m]oved by Hansen and seconded by Allen that the Board Approve a mutual agreement between Dr. Roskens and The Board of Regents which will provide the following:
>
> (1) Effective August 1, 1989, Dr. Roskens will be appointed President Emeritus.
>
> (2) Effective August 1, 1989, Dr. Roskens will be appointed Professor of Higher Education - University of Nebraska with tenure until June 30, 1991.
>
> (3) Dr. Roskens will vacate the Office of President effective July 31, 1989.
>
> (4) Dr. Roskens' contract of employment will be

honored as follows: Current salary shall be paid through June 30, 1991, together with the standard University fringe benefits of employment which are retirement, social security, accrued annual vacation leave, health and dental insurance, health and dependent reimbursement account, life insurance and disability insurance.

(5) The terms set forth above will be reduced to a written agreement which will include a provision that neither party will pursue legal recourse against the other except in the unlikely event of non-compliance with any portion of the agreement.

. . . .

Moved by Allen and seconded by Robinson that Martin Massengale be appointed Interim President of the University of Nebraska effective August 1, 1989, and will continue to occupy the office of Chancellor of the University of Nebraska-Lincoln.

Trial testimony disclosed that the Board knew that it was putting Dr. Massengale in a very difficult position by his assuming a dual role, but that the Board felt that continuity was critical. In addition, Regent Hoch responded to questioning about the cost to the taxpayers of the agreement with Dr. Roskens by saying that when the Board appointed Dr. Massengale, he assumed two positions with only a relatively small stipend in addition to his salary as chancellor for assuming the additional duties of president. The appointment of Dr. Massengale was apparently a savings to the taxpayers by removing the necessity of hiring an interim president at a salary closer to market value for the position of president of a major university system.

We determine that notice of the emergency meeting on July 31 was reasonable under the circumstances. In addition, notice to the public regarding actions taken at the emergency meeting was provided, as the minutes were posted on August 1.

Because of our holding above, we do not discuss appellant's fifth assignment of error.

*Mootness.*

Appellee argues that this appeal should be dismissed as moot

because appellant is not seeking to change the status quo in any way; he is not asking that Dr. Roskens be reinstated as president of the university or that the Board's action in 1989 be reversed or set aside in any way. The only relief appellant sought from the district court, other than attorney fees, was a declaration that the Board's actions were not in compliance with the public meeting law. Voiding the contract was not possible here because the necessary parties were not part of the lawsuit. An action becomes moot

> when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action. . . . In order to grant declaratory relief, there must be a justiciable issue. A justiciable issue requires a present, substantial controversy between parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement.

(Citation omitted.) *Koenig v. Southeast Community College,* 231 Neb. 923, 926, 438 N.W.2d 791, 794 (1989).

"Appellate courts do not sit to give opinions on moot questions, and an appeal will ordinarily be dismissed where no actual controversy exists between the parties at the time of the hearing." *Id.* at 926-27, 438 N.W.2d at 795.

There is, however, an exception to the general rule regarding moot questions which applies to matters of public interest. "The public interest exception . . . requires a consideration of the public or private nature of the question presented, desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem." *Id.* at 927, 438 N.W.2d at 795. The Legislature has declared that it is the policy of this state that the formulation of public policy is public business. In *Grein v. Board of Education,* 216 Neb. 158, 163-65, 343 N.W.2d 718, 722-23 (1984), the Nebraska Supreme Court said:

> The Nebraska Public Meetings Laws are a statutory commitment to openness in government. As a result of open meetings, there will be development and maintenance of confidence, as well as participation, in

our form of government as a democracy. . . .

. . . .

    Public meetings laws are broadly interpreted and liberally construed to obtain the objective of openness in favor of the public. . . . Provisions permitting closed sessions and exemption from openness of a meeting must be narrowly and strictly construed.

(Citations omitted.) The likelihood of an occurrence similar to the instant one is not so remote as to be a unique factual situation. See *Koenig v. Southeast Community College, supra* (resolutions passed and actions taken to close one campus and transfer programs to another campus). "If a public body is uncertain about the type of session to be conducted, open or closed, bear in mind the policy of openness promoted by the Public Meetings Laws and opt for a meeting in the presence of the public." *Grein,* 216 Neb. at 168, 343 N.W.2d at 724. This philosophy cannot be repeated too often. While we find no substantial violation here, we do find that this pronouncement of opting for openness is worth restating.

## CONCLUSION

We find that the actions of the Board regarding the July 31, 1989, meeting were in compliance with the Nebraska public meeting law, in spite of the fact that the initially posted minutes of the July 31 meeting did not include the nature of the emergency meeting. Revised minutes which specifically included the nature of the meeting were posted on August 3.

Because we determine that the Board's actions on July 31 were not in violation of the public meeting law, §§ 84-1408 through 84-1414, the judgment of the district court is affirmed. Appellant has asked for attorney fees in this case, but we determine that each side should pay its own.

AFFIRMED.