ELDEAN E. HANSMEYER AND DIANE K. HANSMEYER, APPELLANTS AND CROSS-APPELLEES, V. NEBRASKA PUBLIC POWER DISTRICT, APPELLEE AND CROSS-APPELLANT.

578 N.W.2d 476

Filed April 28, 1998.   No. A-96-1164.

I

Donald J. Pepperl, of Pepperl & McMahon-Boies Law Offices, for appellants.

James A. Eske, of Barlow, Johnson, Flodman, Sutter, Guenzel & Eske, and Bonnie J. Hostetler for appellee.

HANNON, SIEVERS, and MUES, Judges.

SIEVERS, Judge.

Eldean E. Hansmeyer and Diane K. Hansmeyer, husband and wife, brought suit against the Nebraska Public Power District (NPPD), alleging that the agenda for the meeting of NPPD's board of directors (Board) on September 30, 1993, violated the requirements of the Nebraska public meetings laws, Neb. Rev. Stat. §§ 84-1408 to 84-1414 (Reissue 1987, Cum. Supp. 1992 & Supp. 1993). The agenda allegedly failed to provide an adequate description of the matters to be taken up at that meeting. In particular, item No. 3.10 on the agenda listed only "Work Order Reports," but under this topic, the Board approved a work order for $47,549,700 for the construction of a 96-mile, 345 Kilovolt (345 kV) transmission line from the Pauline substation to the Mark Moore substation. The district court found that the public meetings laws had been violated but that the adoption of the work order was only voidable. The court concluded not to void the action of NPPD and denied the Hansmeyers' request for attorney fees. They now appeal to this court.

## FACTUAL BACKGROUND

On September 30 and October 1, 1993, the Board held a monthly meeting. The agenda for that meeting under item No. 3.10 listed "Work Order Reports." There was no other description under this agenda item. At this meeting, a category of work orders entitled "Work Orders $50,000 and Above to be Approved by the Board" was taken up by the Board. Within that category was a three-page document designated as "Report #1A" (work order report No. 1A) in the amount of $47,549,700. The third page of work order report No. 1A contained the state-

ment: "Construct 96 mi. 345kV transmission line from Pauline Sub to Mark Moore Sub." The actual work order, a different document than the report, is designated as "Investment 24100 [work order No. 24100]," a designation assigned by NPPD's accounting department. Work order No. 24100 breaks down the total expenditure into 11 different categories. The work order itself is stamped with the approval of the Board on September 30, 1993. It indicates an "approximate start date" of October 1993 and a "required/scheduled completion date" of March 1996. A work order at NPPD is a document which is developed to define the scope of a construction project and its cost components. NPPD work orders are generally written against previously approved budget items.

The third amended petition, upon which trial was had, alleges that the Hansmeyers own real estate across which the "Pauline-Moore" transmission line would be constructed. The third amended petition alleges that the agenda of the Board failed to advise the general public that the matter or issue of the construction of the Pauline-Moore line was to be considered by the Board, resulting in noncompliance with the mandatory requirements of the public meetings laws. The Hansmeyers allege that the Board's vote of approval for the construction of 96 miles of a 345 kV transmission line from the Pauline substation to the Mark Moore substation in the amount of $47,549,700 "is null and void," and they ask that the Board's action be set aside. NPPD admitted the vote on September 30, 1993, to approve the work order but denied the other allegations of the petition.

The case was tried before Paul D. Merritt, Jr., judge of the district court for Lancaster County, and he rendered his decision via a complete and comprehensive order on October 31, 1996. Judge Merritt found that there had been a substantial violation of the public meetings laws, rendering the Board's action voidable, but that there was no basis to void the action. As a result, the court denied the Hansmeyers' request for attorney fees and dismissed their petition.

## ASSIGNMENTS OF ERROR

The Hansmeyers assign two errors: The trial court erred (1) in not declaring the vote which approved work order report No.

1A void and (2) in failing to award attorney fees. NPPD has filed a cross-appeal, asserting that the trial court erred in finding that the Board was in substantial violation of § 84-1411, thereby making the Board's action in approving work order report No. 1A voidable under § 84-1414(1) of the public meetings laws.

## STANDARD OF REVIEW

Actions for relief under the public meetings laws are tried as equitable cases, given that the relief sought is in the nature of a declaration that action taken in violation of the laws is void or voidable. Thus, the approach taken is that such cases are tried and reviewed by the appellate courts as equity cases. See, *Otey v. State*, 240 Neb. 813, 485 N.W.2d 153 (1992); *Meyer v. Board of Regents*, 1 Neb. App. 893, 510 N.W.2d 450 (1993).

In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Meyer v. Board of Regents, supra*, citing *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991). Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *Otey v. State, supra.*

## DISCUSSION

The Legislature declared its intent in § 84-1408 that the policy of this state is that "the formation of public policy is public business and may not be conducted in secret." That statute continues: "Every meeting of a public body shall be open to the public in order that citizens may exercise their democratic privilege of attending and speaking at meetings of public bodies . . . ." NPPD admits it is a political subdivision of the State of Nebraska. The meeting at issue is a "meeting" within the parameters of § 84-1409(2) because it involved the discussion of public business, the formation of tentative policy, or the taking of any action of the public body.

> Section 84-1411 provides that each public body shall give reasonable advance publicized notice of the time and place of each meeting . . . transmitted to all members of the public body and to the public. Such notice shall contain an agenda of subjects known at the time of the publicized notice or a statement that the agenda, which shall be kept continually current, shall be readily available for public inspection at the principal office of the public body during normal business hours.

The appeal in this case involves a relatively narrow issue: Did the agenda for the September 30 and October 1, 1993, meeting provide sufficient notice of the matter to be considered, and if not, was the appropriate remedy under the public meetings laws? Each public body is required to give reasonable advance notice of the time and place of a meeting and to provide "an agenda of the subjects to be considered at the meeting." *Steenblock v. Elkhorn Township Bd.*, 245 Neb. 722, 726, 515 N.W.2d 128, 130 (1994).

In *Banks v. Board of Education of Chase County*, 202 Neb. 717, 277 N.W.2d 76 (1979), the plaintiff sought a declaration that a school board meeting which authorized the approval of a contract with Wilson & Company, who were architects, was void because of a violation of the public meetings laws with respect to the contents of the agenda. The court's opinion recited that the agenda included notice of a " 'discussion' " with John Smutz of Wilson & Company which " 'should result in determining whether we want this company or not.' " *Id.* at 723, 277 N.W.2d at 80. The Supreme Court found that although the language was not "a model of clarity, [it] did inform the public that an agreement with the architect was to be discussed and possibly entered." *Id.* The court rejected the contention that the notice on the agenda was inadequate.

When we compare the extent of the agenda notice provided in *Banks* with that provided in the instant matter, material differences are obvious. Here, the lengthy agenda listed 53 separate items and item No. 3.10 simply stated "Work Order Reports." Under that topic, the Board took up and approved work order report No. 1A, which was work order No. 24100, for an expenditure of over $47 million for the construction of a

96-mile transmission line across privately held property to connect two NPPD substations. The minutes of the meeting of September 30 and October 1, 1993, show that the vice president of operations, William A. Merrill, presented work order report No. 1A to the Board. The minutes reflect that Merrill explained that the work order report was for the construction of 96 miles of a 345 kV transmission line from the Pauline substation to the Mark Moore substation, in the amount of $47,549,700. Merrill explained to the Board the available options and the benefits of the project which he said would be a $213 million benefit to the district over a 35-year period, according to a staff study. The minutes further show that Merrill told the Board that the district's cost each month the line was delayed was approximately $750,000. There was a motion that work order report No. 1A be approved, which was carried.

The descriptive phrase on the agenda, "Work Order Reports," hardly describes or gives notice of a matter of this magnitude. This is particularly true when we compare it with the descriptive notice approved in *Banks v. Board of Education of Chase County, supra.* The public meetings laws are to be broadly interpreted and liberally construed to obtain the objective of openness in favor of the public. *Grein v. Board of Education*, 216 Neb. 158, 343 N.W.2d 718 (1984). The purpose of the agenda requirement of the public meetings laws is to give "some notice of the matter to be considered at the meeting so that persons who are interested will know which matters will be for consideration at the meeting." *Pokorny v. City of Schuyler*, 202 Neb. 334, 339-40, 275 N.W.2d 281, 285 (1979). We have little hesitancy in concluding that an agenda item stating only "work order reports," which results in a public body's approving a $47 million, 3-year construction project traversing private land for nearly 100 miles with a major power transmission line, violated the notice requirements for an agenda under the public meetings laws. Whether intentional or not, the seemingly innocuous agenda item, "Work Order Reports," camouflaged the true nature of what would be discussed and voted upon and did not give the public meaningful notice so as to enable the public to observe and participate in the decisionmaking process. It does not even hint of the magnitude or nature of the matter to

be taken up. Thus, there was a substantial violation of the public meetings laws, but the Supreme Court's opinion in *Pokorny* requires another step in our analysis.

In *Pokorny v. City of Schuyler, supra,* a taxpayer brought suit to declare void the action taken by the Schuyler City Council relating to the purchase of land for the use and improvement of the city's sanitary sewage disposal system on the ground that the city had violated provisions of the public meetings laws. Although the case involved a number of issues, including when and where notice of a meeting should be posted, the court also addressed the sufficiency of notice in agendas. The agendas for the March 16 and 25 meetings at issue provided, respectively, " '2. Lad (sic) appraisals discussion' " and " '[d]iscussion of terms of land acquisition contract.' " 202 Neb. at 340, 275 N.W.2d at 285.

The Supreme Court said that these items, if considered separately, would not furnish "much notice of the matter to be considered by the council," *id.,* but if viewed in light of the entire record, then it was apparent that few persons would be misled as to the nature of the matter to be considered by the council. The court found that the purchase of land for the sewage disposal improvement project had been an item of business for some time at previous council meetings and that the agendas for those meetings had contained an adequate description of the matter to be considered by the council. Nonetheless, the court found the agenda items "technically deficient," *id.,* but standing alone, the agenda would not destroy the validity of the action taken at the March 16 and 25 council meetings, where the council adopted a resolution agreeing to purchase the land in question for $2,000 per acre contingent upon the city's receipt of a federal grant. The March 16 meeting was a special meeting of the council where the council voted to go into executive session with only the landowners, the board of public works, and the utility superintendent being allowed to remain. When the council reconvened in open session, the council voted to recommend to the board of public works that the board offer the landowners $2,000 per acre for the tract. There were violations of the public meetings laws because notice of this meeting was posted at 10 p.m. on March 15 and because the minutes failed to reflect

the reason for the closed session as required by § 84-1410. The meeting of March 25 was a special meeting called without compliance with Neb. Rev. Stat. § 17-106 (Reissue 1997) (authorizing special meetings of city council).

The court then said that the "effect of the invalidity of the meetings of March 16 and March 25 is the same as if the meetings had never occurred." *Pokorny v. City of Schuyler*, 202 Neb. 334, 341, 275 N.W.2d 281, 285 (1979). In assessing *Pokorny*, we believe it is noteworthy that there were other clearly established violations of the public meetings laws which did not deal with the contents of the agenda. Despite finding that it was as though the meetings had never occurred, the *Pokorny* court summarily rejected the trial court's injunction which permanently enjoined the city " 'from carrying out any action authorized' " at either meeting. *Id.* The court observed that carried to its logical conclusion, this order would prevent the city from ever purchasing the land, and the court did not "think this was the intent or purpose of the public meeting law." *Id.* The *Pokorny* court cited the principle that "where a defect occurs in proceedings of a governmental body, ordinarily the defect may be cured by new proceedings commencing at the point where the defect occurred. See 5 McQuillan, Municipal Corporations, § 16.93, p. 299; 56 Am. Jur. 2d *Municipal Corporations*, § 508 . . . ." *Id.* Thus, the *Pokorny* court said the council could authorize the purchase of the land at a subsequent meeting which complied with all statutory requirements, which actually occurred at a later meeting on March 29, 1977. The *Pokorny* court specifically observed that the agenda description for the March 29 meeting which stated " 'approval of contract with Langemeier-Wagner Company requested by EPA' " was substantial compliance with all statutory requirements concerning notice. 202 Neb. at 341, 275 N.W.2d at 285. This holding seems to construct a rather flexible, perhaps even a low, standard for notice in an agenda. We suggest this because, unless a citizen was already aware that the land under consideration by the city for purchase for the sewage facility was owned by the Langemeier-Wagner Company, this agenda item as listed would tell a citizen virtually nothing about what would be taken up under this agenda item. In short, for the agenda to make sense

and be informative, the citizen must have some prior and rather substantial knowledge of the issue. Nonetheless, on the basis of the notice provided by the quoted agenda description, the *Pokorny* court concluded that the action of the council at the March 29 meeting "cured the defects which resulted from the invalidity of the meetings of March 16 and March 25." *Id.* at 342, 275 N.W.2d at 285. Consequently, the plaintiffs were not entitled to injunctive relief, and the district court's decision was reversed.

The trial court in the instant case relied upon *Pokorny* and examined the agendas for four prior regular Board meetings of July 9 and 10, 1992, and January 7 and 8, April 1 and 2, and August 5 and 6, 1993. The court found that the agendas for those meetings failed to specifically name or allude to the Pauline-Moore transmission line. The meaning of such failure is that the defective notice for the September 30 and October 1 meeting cannot be cured by a contextual reference to a series of immediately preceding Board meetings where the Pauline-Moore project was discussed under adequate agenda notice. The trial court then noted that the agenda for the regular meeting immediately after the September 30 and October 1 meeting specifically referred to the Pauline-Moore project. The agenda for the regular meeting of October 28 and 29 had "Pauline-Moore 345 kV Routing & ROW Acquisition" under agenda item No. 6.1.1. Under this item, the Board received an "update" from the vice president of operations, Merrill, summarizing the routing process for the transmission line, and Merrill told the Board about a "recent influx of correspondence from landowners and concerned citizens along the corridor study area."

The evidence shows that the initial funding for the Pauline-Moore transmission line was approved at the July 9 and 10, 1992, regular Board meeting as part of the 1993 budget and that final funding was provided for in the 1994 budget at the August 5 and 6, 1993, regular meeting. However, after examination, we find that the agendas for neither meeting provided any clue that a major project to build a transmission line between the Pauline substation and the Mark Moore substation would be considered and voted upon. However, the agenda for the March 8 and 10, 1995, regular meeting, under the category of "Work Order

Reports," listed item No. 5.12 as "Contract No. 95-2 - 345 kV Transmission Construction - Pauline-Moore." This agenda description is materially different from that found wanting for the September 30 and October 1 meeting. Under *Pokorny*, there was sufficient agenda notice for the March 1995 meeting.

At the March 1995 meeting, the Board adopted resolution No. 95-49, which recited that bids on contract No. 95-2, 345 kV transmission line construction, had been invited, received, opened, read, and tabulated. The minutes also recite that management had studied and analyzed the bids and recommended acceptance of a certain bid as the lowest and best bid. Consequently, the Board determined and found that the bid of Tri-O, Inc., of Salt Lake City, Utah, was the lowest and best evaluated bid on contract No. 95-2, and thus a resolution was passed by the Board to accept the bid of Tri-O, Inc., at a "base bid price" of $7,806,136.43. However, the minutes also show that during the "time designated for public comments," various citizens, landowners, and an attorney addressed the Board concerning the Pauline-Moore line route. Some of these people urged a delay of the project. Although the Board rejected a proposal for an independent review of the Pauline-Moore transmission line project by People Organized for Wise Energy Representation (POWER), the Board nonetheless formed an ad hoc committee to meet with the POWER group "to review areas of concern by affected landowners in the Pauline-Moore Project."

The foregoing evidence about the agenda and the occurrences at the March 8 and 10, 1995, meeting establishes how easy it was to designate on the agenda that the Pauline-Moore transmission line or some facet thereof was going to be taken up at a Board meeting. The notice provided in the agenda for the March 1995 meeting is clearly sufficient under *Pokorny v. City of Schuyler*, 202 Neb. 334, 275 N.W.2d 281 (1979), to give some notice of the matter to be considered at the meeting so interested persons would know what would be considered at that particular meeting.

*Void or Voidable?*

Any motion, resolution, rule, or formal action of a public body made or taken in substantial violation of the public

meetings laws shall be voidable by the district court if suit is commenced more than 120 days after, but within 1 year of, the meeting. § 84-1414. This lawsuit was commenced more than 120 days after the action of September 30 and October 1, 1993, but within 1 year of that date. Section 84-1414 also pronounces that an action taken in violation of the public meetings laws "shall be declared void by the district court if the suit is commenced within one hundred twenty days of the meeting of the public body" at which the action occurred. The Hansmeyers assert that the district court was obligated to "void the subject vote" once it found that a violation had occurred. Brief for appellants at 17.

The Hansmeyers' argument seems to ignore the difference between void and voidable. There are two different terms used in parallel language in § 84-1414: void and voidable. Where different language is used in different parts of a statute, it is presumed that the language is used with a different intent. 73 Am. Jur. 2d *Statutes* § 235 (1974). Prior to 1983, the statute contained a 1-year statute of limitations and provided only that any action made or taken in violation of the public meetings laws "shall be declared void." The statute of limitations provision was amended to its present form by 1983 Neb. Laws, L.B. 43. We have said in *In re Interest of Shea B.*, 3 Neb. App. 750, 755, 532 N.W.2d 52, 56 (1995), quoting *State v. Suhr*, 207 Neb. 553, 300 N.W.2d 25 (1980): "It has been stated that '[t]he Legislature, in enacting [an amendatory] statute, is presumed to have known the preexisting law, and [it is presumed] that the language was intentionally changed for the purpose of effecting a change in the law itself. . . .' "

The sponsor of L.B. 43, Senator Peter Hoagland, during floor debate, stated that the legislation changes "the enforcement provisions a little bit by changing the statute of limitations provisions on the issue of when the decision of a public body is voidable as opposed to . . . being void." Floor Debate, Committee on Government, Military, and Veterans' Affairs, 88th Leg., 1st Sess. 1897 (Mar. 22, 1983). The senator's language comports with the well known legal distinction between void and voidable, whereby, void is ineffectual, having no legal force or binding effect; whereas, voidable is " '[t]hat which may be avoided,

or declared void[,] not absolutely void . . . . ' " See *Miller v. School Dist. No. 69*, 208 Neb. 290, 297, 303 N.W.2d 483, 488 (1981), quoting Black's Law Dictionary (5th ed. 1979).

The district court found under the circumstances of this case that "nothing will be served, at this late date, by voiding the September 30/October 1, 1993, vote." This decision is rather unassailable when it is remembered that the Pauline-Moore project was one developed, studied, approved, and budgeted in increments. The reality is that a "no vote" by the Board at any juncture as the project proceeded could have resulted in the death of the project. As we have discussed from the evidence, the quality of notice given to the public varied greatly from meeting to meeting, but there is no evidence that any decision to undertake the project, or to continue moving forward with it, was made in secret without either public discussion or accountability from the Board.

Therefore, given these facts, along with the subsequent ratification at the March 1995 meeting which we have detailed and which was under adequate agenda notice, we conclude that the district court was correct in finding that the Board's action of September 30 and October 1, 1993, should not be declared void. For this reason, we agree with the district court's finding that the action of the Board of September 30 was voidable, but we affirm the conclusion that it should not be declared void.

*Attorney Fees.*

■ The Hansmeyers claim that they were successful parties and therefore should have been awarded attorney fees by the district court. The relevant statutory provision is § 84-1414(3), which provides that citizens of this state may commence actions in district court for the purpose of requiring compliance with or preventing violations of the public meetings laws or for the purpose of declaring an action of a public body void. Section 84-1414(3) also provides that "[t]he court may order payment of reasonable attorney's fees and court costs to a successful plaintiff in a suit brought under this section." The Hansmeyers' brief concedes that the decision to award fees is a discretionary one with the trial court. It is well established that discretionary decisions of the trial courts on attorney fees will be upheld on

appeal absent a showing of abuse of discretion. *In re Estate of Watkins*, 243 Neb. 583, 501 N.W.2d 292 (1993). The Hansmeyers also concede that in addition to the question of the trial court's discretion, the term "successful plaintiff" is also a determinative factor on whether attorney fees are awarded.

The court in *Airport Inn v. Nebraska Equal Opp. Comm.*, 217 Neb. 852, 863, 353 N.W.2d 727, 734 (1984), in the portion of its opinion dealing with whether attorney fees should be awarded, acknowledged that "success can sometimes be measured in small ways." *Airport Inn* was a Nebraska Fair Employment Practice Act case, where the plaintiff was successful before the commission. The court held that it was an abuse of discretion for the district court not to award the plaintiff attorney fees. In the case at hand, the case was tried upon the third amended petition, and the relief requested was that the vote of approval of the Board on work order report No. 1A on September 30 and October 1, 1993, be set aside as null and void. The district court did not grant that relief, nor do we. However, the district court found a violation of the public meetings laws with respect to the adequacy of notice in the agenda, which finding we have affirmed. But there was later ratification of the flawed action after proper agenda notice.

We note that the meeting constituting the ratification upon proper agenda notice was held after this suit had been filed. Thus, although the Hansmeyers were not successful in accomplishing all of the prayer of their third amended petition, voiding the action of the Board in approving the work order report on September 30, 1993, there was, during the course of the lawsuit, compliance with the notice requirements for an agenda and a ratification which "saved" a Board decision which could have been voided. The statute, § 84-1414, allows citizens of the state to commence suit for multiple purposes, including requiring compliance with or preventing violations of the public meetings laws, as well as declaring an action of the public body void. Section 84-1414 then allows the court to order payment of costs to a "successful plaintiff in a suit brought under this section." If, as appears to be true here, the agenda requirements for adequate notice were complied with only after the litigation was instituted, and since the trial court found, as have

we, that there was a substantial violation of the agenda require-
ments, we believe the Hansmeyers are successful plaintiffs.
However, their success, as in *Airport Inn v. Nebraska Equal
Opp. Comm., supra*, must be measured in small ways. The fact
that the Hansmeyers did not accomplish the full objective of
their lawsuit does not prevent them from being "successful
plaintiffs," but, rather, goes to the extent of an award for attor-
ney fees, as the results obtained are an appropriate considera-
tion on that issue. See *Venter v. Venter*, 249 Neb. 712, 545
N.W.2d 431 (1996). Additionally, courts consider the nature of
the case, the amount involved in the controversy, the services
performed, the length of time required for preparation, the skill
devoted to preparation and presentation of the case, and the
novelty and difficulty of the questions raised, as well as cus-
tomary charges of the bar for similar services. *Id.*

Therefore, we remand the cause to the district court for an
award of appropriate attorney fees.

## CROSS-APPEAL

The cross-appeal of NPPD assigns error to the district court's
conclusion that there was a substantial violation of § 84-1411
with respect to the description in the agenda of the matters to be
taken up at the meeting. The notice provided by agenda item
No. 3.10, "Work Order Reports," has been thoroughly discussed
in the foregoing sections of this opinion and found to be want-
ing. The fact that the district court did not void the action of the
Board and that we have upheld that result, principally due to the
subsequent ratification, does not change the fact that the agenda
failed to provide adequate notice. NPPD advances the proposi-
tion that the agenda was not misleading and that "any question
concerning the detailed content of the work order reports that
were to be considered by the Board at the meeting could be
answered easily by examining the actual work order report doc-
uments," which were available for public inspection before the
meeting at the same place where the agenda was kept. Brief for
appellee on cross-appeal at 35. NPPD cites no authority, statu-
tory or otherwise, for the proposition that the citizen must hunt
up and read the documents which underlie the agenda, and we
find none either.

There is, however, an alternative provision in § 84-1411 that the notice for a meeting may recite a "statement" that a "continually current" agenda "shall be readily available for public inspection at the principal office of the public body during normal business hours." But from the record, it is clear that NPPD did not utilize the option of making the agenda available for inspection *and* providing notice to the public of that fact via an "advance[d] publicized notice" of the meeting. See § 84-1411. Instead, NPPD's chosen method of operation was to put together an agenda and disseminate it to the public. We do not believe NPPD can nullify the flaw in the agenda for the September 30 and October 1, 1993, meeting by saying NPPD "could have done it by another method," when the record is clear that it did not use an alternative method. We think it self-evident that if the public body uses an agenda to provide notice, then the notice in the agenda must comport with the law for giving notice of what is to be considered at the meeting. The agenda is to give the public notice of what the governing board of the public body will take up. The agenda in this case failed to advise the public of what the Board would take up under item No. 3.10, "Work Order Reports."

█ NPPD also advances the proposition that there "is no statutory requirement that the Board conduct public hearings or otherwise take any formal action to approve the construction of a transmission line." Brief for appellee on cross-appeal at 36. The public meetings laws are to be broadly interpreted and liberally construed to obtain the objective of openness in government. *Grein v. Board of Education*, 216 Neb. 158, 343 N.W.2d 718 (1984). In *Grein*, the court discussed that the public interest mentioned in the public meetings laws is that shared by citizens in general and by the community at large concerning pecuniary or legal rights and liabilities. The court also said that it is axiomatic that the concerns of citizens and taxpayers of a school district include the fiscal policy and cost of operating the district, as the expenses will ultimately be reflected in taxes borne by the taxpayers. These considerations apply with equal force to public power districts. *Grein* also references Note, *Open Meeting Statutes: The Press Fights for the "Right to Know,"* 75 Harv. L. Rev. 1199 (1962), saying that the people

must be able to go beyond and behind the decisions reached and be apprised of the pros and cons involved if they are to make judgments on questions of policy and to select their representatives intelligently.

These broad concepts apply with great force to the decision of the Board to expend $47 million to erect a major power transmission line between substations over nearly 100 miles of private land. Such a project obviously has a direct impact on landowners, ratepayers, and the public at large. To suggest that such a matter is not within the ambit of the public meetings laws ignores the fundamental purpose of the statutes that such decisions be made openly and upon notice to those who are affected or interested. This is not to say that every trivial decision made by NPPD and its managers is subject to the public meetings laws. It is, rather, to reject out of hand the argument advanced in the cross-appeal that the decision to build the Pauline-Moore transmission line is not subject to the public meetings laws.

## CONCLUSION

We affirm the findings of the district court in all respects except that we find the Hansmeyers to be "successful plaintiffs." Therefore, we remand the cause to the district court for a determination of an appropriate award of attorney fees and costs. The cross-appeal of NPPD is without merit.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.