JOHN ALDERMAN ET AL., APPELLANTS,
v. THE COUNTY OF ANTELOPE,
NEBRASKA, ET AL., APPELLEES.
653 N.W.2d 1

Filed September 24, 2002.    No. A-01-313.

Gregory D. Barton and Karen Haase, of Harding, Shultz & Downs, and Bruce D. Curtiss, of Curtiss Law Office, P.C., for appellants.

Michael L. Long, Antelope County Attorney, and Terri M. Weeks, of Boucher Law Firm, for County appellees.

Mark A. Johnson, of Johnson, Morland & Easland, P.C., and Timothy E. Brogan for appellees teVelde.

IRWIN, Chief Judge, and HANNON and INBODY, Judges.

INBODY, Judge.

## I. INTRODUCTION

John Alderman, Bobby Johnston, Randall Pedersen, and Hanging "L" Ranch, Inc., a Nebraska corporation (collectively the appellants), appeal the orders of the Antelope County District Court dismissing their petition requesting declaratory, injunctive, and other relief and denying their motion for new trial. The appellants had requested that the district court declare void the successive decisions of the Antelope County Board of Supervisors (Board) to issue conditional use permits to allow Todd teVelde and Chad teVelde, doing business as Summerhill Dairy, to expand the size of their dairy, which is located at the headwaters of the East Verdigre Creek, from 150 cows to 700 cows. The appellants further contend that the amount of attorney fees awarded by the district court to them was insufficient. For the reasons set forth herein, we affirm in part, in part reverse, and remand with directions.

## II. STATEMENT OF FACTS

On June 11, 1999, Chad teVelde and Todd teVelde filed an application with the Board for a conditional use permit. The teVeldes sought to expand the size of their dairy operation from 150 cows to 700 cows and included with their application a proposal to build a 1.3-acre wastewater lagoon. The teVeldes' Summerhill Dairy facility is located on the "SE 1/4 of Section

1-27-7, in Antelope County," Nebraska, in the watershed of the East Verdigre Creek, a cold-water Class A stream. East Verdigre Creek is the only cold-water stream of its kind in the Nebraska Game and Parks Commission system, in that it is ideal for raising trout. East Verdigre Creek serves as a water supply to the Grove trout rearing station and Grove Lake, which are located within the Grove Lake wildlife management area. Forty percent of the trout stocked in Nebraska's waterways are raised at this trout rearing station located on the creek.

On August 10, 1999, the Board granted a request by the teVeldes for a loan in the amount of $158,000 to be used for the purpose of constructing two barns and an earthen lagoon waste facility on the above-described property. On August 24, a public meeting was held at which the Antelope County Planning Commission (Planning Commission) considered the teVeldes' application for a conditional use permit. Although it was brought to the Planning Commission's attention that public notice of the meeting was defective and the meeting was officially continued until September 7, the Planning Commission allowed persons present to give opinions, both pro and con, regarding the proposed Summerhill Dairy expansion.

Between the conclusion of the Planning Commission's August 24, 1999, meeting and the scheduled September 7 meeting, Mark Smith, chairperson of the Planning Commission, and Todd teVelde discussed arranging a tour of a facility similar to that of the proposed dairy expansion or finding another way to acquire knowledge on the waste handling facility issue. Todd teVelde and Smith agreed to have Rick Koelsch, a livestock environmental engineer with the University of Nebraska, come to the Summerhill Dairy to "address the concerns that the board had from all the opposition that we heard." This meeting was held on August 31 at the Summerhill Dairy and was attended by seven of the nine members of the Planning Commission and five of the seven members of the Board. No notice of this meeting was published, and the public was not otherwise notified of this meeting.

On September 7, 1999, the Planning Commission resumed its meeting which had been continued from August 24. After the close of public comment, the Planning Commission voted six to

two to recommend that the Board grant the teVeldes' application. The Board held its public hearing on September 14. Following public comment, the Board approved the teVeldes' conditional use application.

On September 28, 1999, the appellants filed their original petition against Antelope County, the Board, the Planning Commission, and the teVeldes. The appellants sought equitable relief from the district court based upon proceedings of the Board and Planning Commission which they contended deprived them of due process of law, violated the Nebraska public meetings law, and violated Antelope County zoning regulations.

On October 1, 1999, the appellants filed a motion for preliminary injunction, seeking to prevent the teVeldes from taking any action pursuant to the initial conditional use permit. Following an evidentiary hearing on the motion, the district court filed an order on November 17, finding that the August 31 meeting at the Summerhill Dairy violated the public meetings law and that it was thus "clear that the conditional use permit should be declared void." The district court temporarily enjoined Antelope County, the Board, the Planning Commission, and the teVeldes (hereinafter collectively the appellees) from recognizing the September 1999 conditional use permit as valid and temporarily enjoined the teVeldes "from taking any action to expand their existing dairy from 150 cows to 700 cows, until further order of this Court."

On November 18, 1999, 2 days after the district court issued the temporary injunction, the teVeldes filed a second application for a conditional use permit with the Board. On November 23, the teVeldes filed a motion requesting permission from the district court to file a new application for a conditional use permit with the Board. On January 6, 2000, the court granted the teVeldes leave to reapply to the Board.

On January 24, 2000, the Planning Commission held a public meeting to consider the teVeldes' second conditional use application. After the appellants' representative at the public meeting pointed out fatal deficiencies in the second application, the hearing was adjourned, no evidence was received, and no action was taken by the Planning Commission. Subsequently, on February 3, the teVeldes caused their limited liability company, Royal View

Ranch L.L.C., to file a third application with the Board for a conditional use permit.

On February 15 and 16, 2000, the Planning Commission held a public hearing to consider the third teVelde conditional use application. Following public comment, the Planning Commission voted seven to two to recommend approval of this application to the Board. On March 7, following a public hearing, the Board granted the teVeldes' third application, authorizing them to expand their dairy from 150 to 700 cows.

On June 1, 2000, the appellants received leave from the district court to file an amended petition to raise claims based on post-temporary injunction events. The amended petition restated the claims set forth in the original petition and sought additional equitable relief from the district court based upon proceedings of the Board and Planning Commission in February and March 2000 which they contend deprived them of due process of law, violated the Nebraska public meetings law, violated Antelope County zoning regulations, and were contrary to the public interest.

Trial in this matter was held on October 30 and 31, November 10, and December 8, 2000. At trial, Planning Commission member Phyllis Perdew testified as follows during her cross-examination:

Q. Ma'am, if I understand your testimony correctly, is it your testimony that you didn't need to review all the information that was submitted at the February 15, 2000 meeting because it was — a lot of it was the same information that had been before the Planning Commission back on September 7th of 1999?

A. That's right, sir.

Q. And if I understand your testimony in this case correctly, ma'am, you originally were opposed to the teVeldes' application back in August of 1999; is that correct?

. . . .

A. Yes.

Q. . . . And I believe you testified at the temporary injunction hearing before this court in October of 1999 that you changed your mind once the Nebraska Game and Parks Commission apparently indicated, at that point back in the fall of '99, that they were not going to object, right?

A. That was part of it, yes.

Q. What was the other part?

A. Well, all the information that we gathered and all the testimony that people gave us.

Q. Some of the information you gathered was at the August 31, 1999 meeting at the [Summerhill Dairy]?

A. Yes, sir.

Additionally, although Planning Commission member Terry Erb testified that he "didn't figure [that he] was supposed to use any information [he] got from [the illegal] meeting," he also admitted that he was "not sure" whether he considered information obtained at the illegal meeting and that he may have considered the information "[t]o some extent." Further, Board chairperson Jan Curtis testified that the Board members rely upon the findings and recommendations of the Planning Commission in deciding whether to grant a conditional use permit. Board member Steven Rix testified that in making his decision to vote for the teVeldes' application, he "relied pretty heavily" on the findings and recommendations of the Planning Commission as they are reported to the Board.

On December 18, 2000, the district court, in considering the meetings held by the Board and Planning Commission in September 1999, stated:

The first four claims for relief center about action taken by the alleged illegal joint meeting of the County Board and Planning Commission on August 31, 1999. Such a meeting did in fact take place without the required compliance with the Nebraska Public Meetings Law. This Court entered a temporary injunction enjoining [the teVeldes] from proceeding further without prior permission of this Court. The [teVeldes] thereafter sought and received permission from this Court to proceed with a new application for a special use permit. This action by this Court makes the [appellees'] first four claims for relief moot.

With regard to the meetings held by the Board and Planning Commission in February and March 2000, the district court found that these meetings satisfied the public meetings law and that "[t]he public was given proper notice and was allowed to comment. The members of each body carefully and thoughtfully

reviewed the evidence received at the respective public hearings and made their decisions solely on that evidence." The court further found that these meetings did not violate due process and that the issuance of the second permit to the teVeldes was not contrary to the public interest. Thus, the court ordered the amended petition dismissed with prejudice and vacated the temporary injunction previously issued by the court.

On December 28, 2000, the appellants filed a motion for new trial and a motion for an award of attorney fees and expenses. On February 12, 2001, the district court denied the motion for new trial and granted, in part, the appellants' motion for attorney fees. Specifically, the court granted the appellants attorney fees and expenses of $6,216.87, which the court calculated as follows: three attorneys, 20 hours each at $130, $80, and $95 (as per the requested rates set forth in the corresponding affidavits), plus mileage of 377 miles at 31 cents per mile (the then existing state rate). The court specifically stated that the hours allotted to each attorney include support staff and office expenses. The appellants have timely appealed to this court.

### III. ASSIGNMENTS OF ERROR

Summarized and restated, the appellants' assigned errors on appeal are as follows: (1) With regard to the September 1999 grant of the teVeldes' application for a conditional use permit, the district court erred in dismissing as moot the appellants' public meetings law claim, civil rights claim, zoning regulations claim, and claim that issuance of the permit was contrary to the public interest; (2) with regard to the March 2000 grant of the teVeldes' application for a conditional use permit, the district court erred in dismissing as moot the appellants' public meetings law claim, civil rights claim, zoning regulations claim, and claim that issuance of the permit was contrary to the public interest; and (3) the trial court erred in failing to award $32,669 in attorney fees and expenses incurred by the appellants.

### IV. STANDARD OF REVIEW

Actions for relief under the public meetings laws are both tried by the trial court and reviewed by appellate courts as equitable cases, given that the relief sought is in the nature of

a declaration that action taken in violation of the laws is void or voidable. *Hansmeyer v. Nebraska Pub. Power Dist.*, 6 Neb. App. 889, 578 N.W.2d 476 (1998). See, *Otey v. State*, 240 Neb. 813, 485 N.W.2d 153 (1992); *Meyer v. Board of Regents*, 1 Neb. App. 893, 510 N.W.2d 450 (1993).

■ On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. *Burlington Northern Santa Fe Ry. Co. v. Chaulk*, 262 Neb. 235, 631 N.W.2d 131 (2001); *White v. Board of Regents*, 260 Neb. 26, 614 N.W.2d 330 (2000).

■ In reviewing a decision of the district court regarding a zoning appeal, the standard of review is whether the district court abused its discretion or made an error of law. Where competent evidence supports the district court's factual findings, an appellate court will not substitute its factual findings for those of the district court. *Eastroads v. Omaha Zoning Bd. of Appeals*, 261 Neb. 969, 628 N.W.2d 677 (2001); *Fitzke v. City of Hastings*, 255 Neb. 46, 582 N.W.2d 301 (1998).

## V. ANALYSIS

### 1. Alleged Errors Relating to teVeldes' Initial Application Approved on September 14, 1999

The appellants' first assignment of error is that the trial court erred in dismissing as moot their claims relating to the initial conditional use permit granted by the Board on September 14, 1999. The appellants alleged violations of public meetings law, due process, and Antelope County zoning regulations and also claimed that the Board's grant of the teVeldes' request for a conditional use permit was contrary to the public interest. They sought the following relief: an order declaring the action of the Board in granting the initial teVelde application to be void and of no legal effect, a permanent injunction preventing the appellees from taking any action to implement the initial teVelde conditional use permit, an award of reasonable attorney fees and costs, and such additional relief as the district court deemed just and proper.

A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation. *Green v. Lore*, 263 Neb. 496, 640 N.W.2d 673 (2002); *Putnam v. Fortenberry*, 256 Neb. 266, 589 N.W.2d 838 (1999). A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *State ex rel. Lamm v. Nebraska Bd. of Pardons*, 260 Neb. 1000, 620 N.W.2d 763 (2001).

The district court's November 17, 1999, order granted the appellants' requested relief in that the court declared void the Board's September 14 grant of the teVelde's request for a conditional use permit and issued a temporary injunction prohibiting the appellees from recognizing the September 1999 conditional use permit as valid and the teVeldes from taking any action to expand their existing dairy until further court order.

Furthermore, because the teVeldes, and their limited liability company, Royal View Ranch L.L.C., have filed subsequent permit applications with the permission of the court, their initial application is no longer viable; thus, the appellants' claims relating to the teVeldes' first application do not rest upon existing facts. This renders these claims moot, with the exception of the appellants' claim regarding the inadequacy of attorney fees granted by the district court pursuant to the Nebraska public meetings law, which claim we address later in this opinion. See Neb. Rev. Stat. § 84-1414(3) (Reissue 1999) (plaintiff who has successfully brought lawsuit claiming violation of Nebraska public meetings law may be awarded reasonable attorney fees and court costs). Thus, the court properly considered the appellants' claim for attorney fees pursuant to the public meetings law and properly dismissed the appellants' remaining claims relating to the September 1999 grant of a conditional use permit as moot.

### 2. Alleged Errors Relating to teVeldes' Application Granted in March 2000

The appellants' second assignment of error is that the trial court erred in dismissing their claims relating to the March 2000 grant of the second conditional use permit. The appellants alleged violations of public meetings law, due process,

and zoning regulations and that the court erred in failing to find that the Board's grant of the teVeldes' request for a conditional use permit was contrary to the public interest.

### (a) Public Meetings Law

We first address whether the district court erred in dismissing the appellants' public meetings law claim relating to the March 2000 grant of a conditional use permit to the teVeldes.

■ The declaration of intent of the Nebraska public meetings law provides, in part:

> It is hereby declared to be the policy of this state that the formation of public policy is public business and may not be conducted in secret.
>
> Every meeting of a public body shall be open to the public in order that citizens may exercise their democratic privilege of attending and speaking at meetings of public bodies
> . . . .

Neb. Rev. Stat. § 84-1408 (Reissue 1999). The public meetings laws are to be broadly interpreted and liberally construed to obtain the objective of openness in favor of the public. *Grein v. Board of Education*, 216 Neb. 158, 343 N.W.2d 718 (1984); *Hansmeyer v. Nebraska Pub. Power Dist.*, 6 Neb. App. 889, 578 N.W.2d 476 (1998).

The district court denied the appellants' public meetings law claim regarding the March 2000 approval of the teVeldes' application for a conditional use permit, finding, "The public was given proper notice and was allowed to comment. The members of each body carefully and thoughtfully reviewed the evidence received at the respective public hearings and made their decisions solely on that evidence."

We have conducted a de novo review of the evidence, as we are required to do, and the evidence establishes that two Planning Commission members testified at trial that they considered evidence presented at the August 31, 1999, illegal meeting in deciding to vote to recommend granting the teVeldes' application for a conditional use permit. Planning Commission member Perdew testified that in deciding to vote affirmatively for the teVeldes' application at the Planning Commission hearing held on February 15 and 16, 2000, she considered "all the information

that we gathered and all the testimony that people gave us," which included information gathered at the August 31, 1999, meeting at the Summerhill Dairy. Further, although Planning Commission member Erb testified that he "didn't figure [that he] was supposed to use any information [he] got from [the illegal] meeting," he also admitted that he was "not sure" whether he considered information obtained at the illegal meeting and that he may have considered the information "[t]o some extent."

Compounding this error is testimony by Board chairperson Curtis, who testified that the Board members rely upon the findings and recommendations of the Planning Commission in deciding whether to grant a conditional use permit. Furthermore, Board member Rix testified that in making his decision to vote for the teVeldes' application, he "relied pretty heavily" on the findings and recommendations of the Planning Commission as they are reported to the Board.

█ It is unthinkable that after a court has voided a board's action after determining that a meeting was held in violation of the public meetings law, the law would still allow members of that board to consider information obtained at that illegal meeting. To do so would completely contradict the stated intent of the public meetings law, which is to ensure that the formation of public policy is public business, not conducted in secret, and to allow citizens to exercise their democratic privilege of attending and speaking at meetings of public bodies. We simply do not know the content and extent of the information that was presented at the illegal meeting. Furthermore, official reports of closed meetings, " 'even if issued, will seldom furnish a complete summary of the discussion leading to a particular course of action. . . .' " *Grein v. Board of Education*, 216 Neb. 158, 164, 343 N.W.2d 718, 722 (1984).

To allow board members to consider information obtained at a meeting that has been judicially determined to be in violation of the public meetings law would allow those board members to consider information that has not been brought before the public and thus would deprive citizens of both hearing said information and speaking either for or against it. Thus, we hold that once a meeting has been declared void pursuant to Nebraska's public meetings law, board members are prohibited from considering any

information obtained at the illegal meeting. Consequently, having determined that information obtained at the illegal meeting in the case at hand was considered by two Planning Commission members, we have no choice but to declare void the actions taken by the Planning Commission at the February 15 and 16, 2000, meeting and by the Board at the subsequent March 7 meeting.

Furthermore, because the invalidity of the Planning Commission's and Board's actions taken on the teVeldes' third application cannot be cured, this matter is remanded to the district court with instructions to enter an order permanently enjoining the teVeldes from proceeding upon the grant of their third application for a conditional use permit.

### (b) Remaining Claims

The appellants also claim that the district court erred in dismissing their due process claim relating to the Board's March 2000 grant of a conditional use permit to the teVeldes and in failing to find that that grant violated Antelope County zoning regulations and was contrary to the public interest.

■ Because we have determined that the March 2000 grant of the teVeldes' request for a conditional use permit was void, a determination of this assigned error is not necessary, as the appellants have already received their requested relief. An appellate court is not obligated to engage in an analysis which is not necessary to adjudicate the case and controversy before it. *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994).

■ Furthermore, to the extent that the appellants' claims requested monetary damages, the evidence at trial was insufficient to prove monetary damages sustained by the appellants. Damages, like any other element of a plaintiff's cause of action, must be pled and proved, and the burden is on the plaintiff to offer evidence sufficient to prove the plaintiff's alleged damages. *Gagne v. Severa*, 259 Neb. 884, 612 N.W.2d 500 (2000). See *World Radio Labs. v. Coopers & Lybrand*, 251 Neb. 261, 557 N.W.2d 1 (1996).

### 3. ATTORNEY FEES

Finally, the appellants claim that the trial court erred in awarding $6,216.87 instead of $32,669 in attorney fees and expenses incurred by the appellants.

■ As a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Salkin v. Jacobsen*, 263 Neb. 521, 641 N.W.2d 356 (2002); *In re Guardianship & Conservatorship of Donley*, 262 Neb. 282, 631 N.W.2d 839 (2001); *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001). In the instant case, the relevant statutory provision is § 84-1414(3), which declares that citizens of this state may commence actions in district court for the purpose of requiring compliance with or preventing violations of the public meetings laws or for the purpose of declaring an action of a public body void. Section 84-1414(3) also provides that "[t]he court may order payment of reasonable attorney's fees and court costs to a successful plaintiff in a suit brought under this section."

■ Further, it is well established that discretionary decisions of the trial courts on attorney fees will be upheld on appeal absent a showing of abuse of discretion. *In re Estate of Watkins*, 243 Neb. 583, 501 N.W.2d 292 (1993); *Hansmeyer v. Nebraska Pub. Power Dist.*, 6 Neb. App. 889, 578 N.W.2d 476 (1998).

■ In determining an award of attorney fees, appropriate considerations include the nature of the case, the results obtained, the amount involved in the controversy, the services performed, the length of time required for preparation, the skill devoted to preparation and presentation of the case, and the novelty and difficulty of the questions raised, as well as customary charges of the bar for similar services. *Hansmeyer v. Nebraska Pub. Power Dist., supra.*

In the instant case, it is apparent from the record that the amount of attorney fees requested by the appellants included amounts spent to advance the public meetings law violation claims, but also amounts spent to advance the appellants' other claims. Considering the difficulty of the questions raised by the appellants' public meetings law claim and the length of time and skill required for preparation of this claim, we cannot say that the district court abused its discretion in its award of attorney fees. Therefore, this assigned error is without merit.

## VI. CONCLUSION

The portion of the district court's order finding that the appellants' causes of action relating to the September 1999 grant of the teVeldes' first application were moot is affirmed. Likewise, the district court's award of attorney fees is affirmed. However, the actions taken by the Planning Commission at the February 15 and 16, 2000, meeting and by the Board at the March 7 meeting are declared void, and this cause is remanded to the district court with instructions to enter an order permanently enjoining the teVeldes from proceeding upon the grant of their third application.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

HANNON, Judge, dissenting.

I must respectfully dissent from the majority opinion. For the reasons stated below, I think this court should reverse the district court's order that dismisses as moot the action concerning the Board's September 14, 1999, approval of the first conditional use permit application and grant a permanent injunction prohibiting the teVeldes from acting pursuant to that permit, rather than affirming the court's dismissal. I would also direct the trial court to award attorney fees to the appellants for the entire action, pursuant to § 84-1414(3). I believe this court should further declare all proceedings before the Board and the district court in this case after September 28, 1999, void because the action of the Board on the second and third applications was taken without jurisdiction and hence was void. I would order those latter applications dismissed for lack of jurisdiction.

The basis for my position is the proposition that in the case of an appeal from an administrative tribunal, "[o]nce the review powers of a court have been invoked, the board has no further jurisdiction over a matter until there is a remand from the court." 4 *Rathkopf's The Law of Zoning & Planning* § 48.03[3][b] (Edward H. Ziegler, Jr. ed. 1997). (Below, I cite and discuss the cases upon which I rely.) In my view, the action which the appellants filed in the district court for Antelope County on September 28, 1999, was an action to set aside the Board's order of September 14 as void under the open meetings law and was an appeal from that order and the action of the Board under Neb.

Rev. Stat. § 23-174.09 (Reissue 1997). I therefore take the position that under the rule summarized by the above authority, the Board did not have any further authority to entertain the teVeldes' applications for a permit until the district court dismissed the action concerning the Board's order on the first application.

It is rather clear that the order of September 14, 1999, was issued in violation of the public meetings law and should be declared void under § 84-1414. In declaring the order void under that law, the trial court merely entered a temporary injunction. Of course, a temporary injunction is not a final order. See, *Einspahr v. Smith*, 46 Neb. 138, 64 N.W. 698 (1895); *O'Connor v. Kaufman*, 6 Neb. App. 382, 574 N.W.2d 513 (1998). That order could not have become final until the court entered a final order. The Board's and Planning Commission's action with regard to the teVeldes' first application was void, and the trial court clearly would have been justified in entering a final order declaring that action void; or, the teVeldes could have confessed judgment or dismissed their losing appeal and started over, but this did not happen. The district court's jurisdiction continued until a final order was entered and that order was appealed, and since that appeal is still pending in this court, this court has exclusive jurisdiction. Therefore, in my view, the case which was started on September 28, 1999, will not be disposed of until this appeal is concluded by this court or the Nebraska Supreme Court, as the case may be.

I realize one might take the position that by filing the amended petition on June 1, 2000, the appellants abandoned their original petition. However, this would make no difference, because all of the proceedings had before the Board between September 28, 1999, and that date were already void because there was an appeal pending in the district court during all of that time. In addition, the appellants never abandoned their position that they wanted an order reversing the order granting the initial application.

I am not relying solely upon the above-quoted proposition for authority for my position. That quote merely summarizes the authorities upon which I rely. In 73A C.J.S. *Public Administrative Law and Procedure* § 194 (1983), it is stated:

> Except as, and to the extent that, a statute may otherwise provide, on institution of proceedings to review or test the

validity of the orders or decisions of the administrative agency, the agency loses jurisdiction over the subject matter of the order during the pendency of such proceedings, and any order on the subject made by the agency while the proceedings for review are pending is a nullity.

I look now to other jurisdictions for authority for my position. *State, ex rel., v. Board*, 54 Ohio St. 2d 75, 374 N.E.2d 1355 (1978), was an action in which the Ohio Court of Appeals dismissed a complaint for a writ of prohibition and the Ohio Supreme Court reversed. In that case, a steel company sought a writ of prohibition to stop an environmental board of review (environmental board) from continuing and to allow further proceedings prior to final appellate determination of an appeal of a first proceeding which was pending in the Ohio Court of Appeals. The Ohio Director of Environmental Protection (Director) had issued a consent and abatement order. This was appealed to the environmental board, and it found that the Director had no authority to issue a consent order and directed that the previous order of the Director be vacated and that the Director issue a conditional order and hold a second hearing. The environmental board's order was appealed in December 1976. The Director issued a conditional order on December 29 and issued a second one on February 18, 1977. The second order was appealed. The steel company then instituted a writ of prohibition in the Ohio Court of Appeals, and that court denied the writ. The steel company argued that when the environmental board's final order was appealed, the environmental board lost jurisdiction over the subject matter and could not entertain relitigation of issues pending on appeal; that a writ of prohibition should be issued, because the environmental board was without authority; and that an appeal from the relitigation would not be an adequate remedy. *Id*. The steel company's opponents argued the merits in a cross-appeal.

The Ohio Supreme Court reviewed these matters and noticed a common issue between the appeal still pending in the Ohio Court of Appeals and the second appeal to the environmental board. In ruling that the environmental board was without jurisdiction to hear the second action, the Ohio Supreme Court stated that an administrative agency has jurisdiction to reconsider its decision

until the institution of a court appeal, but it loses its jurisdiction thereafter. One dissenter did not think the second proceeding was a substantive challenge to the earlier decision, and a second dissenter could not see the "identicalness" of the two cases. *Id.* at 82, 374 N.E.2d at 1359.

In *American Smelting & Ref. Co. v. Arizona Air Pol. C. H. Bd.*, 113 Ariz. 243, 550 P.2d 621 (1976), an appeal from the Arizona Air Pollution Control Hearing Board (pollution board) was dismissed as moot by the Superior Court of Maricopa County. In that case, the pollution board had entered an order which renewed certain restrictions and the plaintiff, a refining company, had appealed. Sua sponte, the pollution board vacated the order which formed the basis for the refining company's complaint in superior court and ordered a hearing for the purpose of modifying a conditional permit previously ordered. The pollution board then filed a motion in the superior court to dismiss the complaint because the order appealed from had been vacated, and the superior court granted that motion on the ground that the issue had become moot. The refining company appealed upon the basis that its previous appeal had divested the pollution board of jurisdiction to further consider the matter. The Supreme Court of Arizona agreed. In making that decision, the court said, "A board, commission or tribunal can use its appropriate modification power to reconsider decisions until the time when an appeal is perfected." *Id.* at 244, 550 P.2d at 622. It further said, by way of quoting an earlier case:

> " '[W]here an appeal had already been perfected from the judgment of the lower court, the Commission's revocation of the certificate it had theretofore issued to Whitfield was a direct and plain invasion of the appellate and revisory powers of this court. The order in question certainly did not aid the appeal; rather, it would tend to nullify it. The jurisdiction of this court when properly invoked must be protected. It cannot be defeated or usurped to the extent that its decision when rendered be nugatory.' "

*Id.* at 244-45, 550 P.2d at 622-23.

The order of the pollution board entered after the appeal was perfected was declared void and of no effect, and therefore, the

superior court had no basis upon which to dismiss the complaint as moot. In *American Smelting & Ref. Co.*, the superior court was directed to consider the merits of the first appeal.

In *Martin v. Dayton School Dist.*, 85 Wash. 2d 411, 536 P.2d 169 (1975), a school district had issued a teacher a notice of discharge which was legally defective. On the same day that the plaintiff appealed the notice of discharge to the superior court, the school district issued a second, legally adequate notice. The trial court and the Washington Supreme Court upheld the teacher's discharge. In doing so, the latter court said that it recognized the general rule that the jurisdiction of an administrative agency over a particular matter ends when the decision is appealed to the court. *Id.* The reason for this rule was that the court's jurisdiction must be complete and not subject to being interfered with or frustrated by concurrent actions by the administrative body. The Washington Supreme Court affirmed the action of the trial court because when the school district issued the second notice, the appeal from the notice of discharge was limited to the court clerk's act of receiving a notice of appeal. *Id.* It emphasized that the trial court had taken no action and that the plaintiff was in no way prejudiced. This case represents a close call on an exceptional situation.

In *Gagne v. Inhabitants of City of Lewiston*, 281 A.2d 579 (Me. 1971), there were substantive issues, but there was also a procedural issue related to the one before this court. The applicable law provided that a board was without authority to grant a company a building exception and to issue a permit for changes to a structure unless it ruled that the structure as changed was not substantially more detrimental or injurious to the neighborhood than the existing structure. The Maine Supreme Court construed this condition to require a finding of fact by the board. The issue was, "Can the absence of this jurisdictional finding be cured by another vote after the Plaintiffs have begun their appeal to the Superior Court by commencing a civil action . . . ?" *Id.* at 583. The court reviewed some authority and stated:

> However, we consider the better reasoned concept of the nature of an appeal to be that the filing of an appeal removes the cause from the administrative tribunal to the Superior Court. We hold that the appeal terminates the

authority of the tribunal to modify its decisions unless the court remands the matter to the tribunal for its further action, thereby reviving its authority.

*Id.*

The *Gagne* court recognized that administrative determinations are subject to change when the matter has not passed beyond the control of the administrative authorities, but that when the jurisdiction of the administrative body has terminated, there is no longer the power to change that determination.

In *Commission v. Continental*, 143 Colo. 590, 355 P.2d 83 (1960), a plaintiff filed a complaint before a commission, alleging unlawful discrimination. In due time, the commission entered its findings of fact, its conclusions of law, and an order finding the defendant, an airline, guilty of discrimination and unfair employment practices, and it ordered the airline to cease and desist. The order was signed only by the coordinator of the commission. The airline filed a petition in the district court, seeking judicial review. The district court remanded the cause to the commission and ordered it to make certain findings and then return the record to the appellate court. Without further notice to the parties or a hearing, the commission entered new findings and new orders, and the enlarged record was sent back to the district court. The district court held that the proceedings for which the review had been instituted had been withdrawn by the commission and that the questions raised in the proceedings were moot. The Colorado Supreme Court considered dismissing the writ of error because there was no final order, but it concluded that the cause should be remanded for further consideration by the trial court.

In making this decision, the Colorado Supreme Court considered whether the commission had jurisdiction on its own motion to vacate, alter, amend, or in any manner enlarge upon an order for which proceedings are directed. It relied in part upon a specific statute and stated:

Even in the absence of the language of the statute this court has repeatedly held that an administrative agency is without authority to change, alter or vacate an order while review proceedings are pending in the district court, even as an inferior court is without authority to vacate or modify a

judgment after writ of error has issued out of this court directed to such judgment.

*Id.* at 594, 355 P.2d at 86.

In *Young v. Eldridge*, 243 S.W.2d 483 (Ky. 1951), a circuit court reviewed orders of the Department of Motor Transportation (DMT) relative to renewing, granting, or refusing certain certificates to operate trucks. Truck operators had filed protests to a renewal, and the DMT denied the motion to renew and a motion to operate a route identical to one the operators already had. The applicant seeking renewal appealed, and the action remained on the court's docket.

Another party filed a complaint, alleging that the applicant was in violation of its certificate and was encroaching upon it. The applicant sought a certificate for unrestricted operation from Louisville to Jamestown over what was called a " 'slightly different route.' " *Id.* at 485. The other parties protested the filing of the second application while the DMT's ruling was pending on appeal in the circuit court. The DMT acted, granting a certificate to operate from Louisville to Somerset and from Louisville to Jamestown. This ruling was affirmed by the circuit court, which also affirmed the ruling where the DMT had denied the previously mentioned motion to reinstate a certificate. In making its decision, the *Young* court stated, "[T]he [DMT] was without jurisdiction to hear [the applicant's] application for an unrestricted certificate from Louisville to Jamestown while the appeal was pending from the [DMT's] ruling wherein it refused to renew certificate No. 110 or to grant a new certificate covering an identical route." *Id.* at 485.

However, the *Young* court held that the DMT would have jurisdiction for a new application by the same applicant for a different route.

I can find no Nebraska cases directly discussing this matter. However, in *Samardick of Grand Island-Hastings, Inc. v. B.D.C. Corp.*, 183 Neb. 229, 231, 159 N.W.2d 310, 313 (1968), the Nebraska State Railway Commission (commission) had entered an order authorizing the appellant to engage in operations as a contract carrier by motor vehicle to transport "cash, letters, checks and other commercial papers, data processing materials, and other documents and records thereto related" over two regular

routes. After the appeal was perfected, the commission entered an "order nunc pro tunc" correcting the order because there was no comma between the words " 'cash' " and " 'letters' " in the above-quoted matter in the order, but a comma between those words was in the application. *Id.* The Nebraska Supreme Court held that the commission was allowed to do this. In so doing, it stated:

> "An appeal or error proceeding, properly perfected, deprives the trial court of any power to amend or modify the record as to matters of substance, but the pendency of an appeal or writ of error ordinarily does not deprive the trial court of the power to correct its record so that it will truly set forth the proceedings as they actually occurred, even though the correction of the error deprives the appellant of his ground of appeal."

*Id.* at 231-32, 159 N.W.2d at 313.

The Supreme Court then stated that the same rule applies to administrative agencies. The court went on to consider the merits of whether or not the action taken by the commission gave rise to a true nunc pro tunc order, concluded that it did, and affirmed the trial court's decision.

From a study of the cases I cite and discuss above, I conclude that the proceedings as conducted by the trial court in this case violated two basic but consistent notions: one, that a proceeding on an application for certain relief cannot be litigated in an appellate tribunal at the same time as the same matter is litigated in a trial-level tribunal, and two, that litigants such as the teVeldes cannot maintain the validity of an initial order on the appeal level while at the same time instituting and maintaining a new action at the lower level just in case their position in support of the first proceedings should prove to be wrong. I do not think the district court's permission for the teVeldes to file the subsequent action gave the subsequent action any validity.

If my position were adopted, this case would determine that no valid decision has been made on the teVeldes' application and that therefore, they could file a new application when these proceedings are over. Upon the basis of *Pokorny v. City of Schuyler,* 202 Neb. 334, 275 N.W.2d 281 (1979), I am inclined to think this action would not prevent a full proceeding on any new application, but that issue can be settled only in a proceeding on any

future application the teVeldes might see fit to institute, not in this appeal.