17 Neb.App. 292
BILLIE WOLF ET AL., APPELLEES AND CROSS-APPELLANTS,
v.
GARY GRUBBS ET AL., APPELLANTS AND CROSS-APPELLEES.
No. A-07-1071.
Court of Appeals of Nebraska.
Filed January 13, 2009.
Howard P. Olsen, Jr., and John F. Simmons, of Simmons Olsen Law Firm, P.C., for appellants.
Robert M. Brenner, of Robert M. Brenner Law Office, for appellees.
IRWIN, SIEVERS, and CARLSON, Judges.
SIEVERS, Judge.
This lawsuit concerns whether certain meetings of the Banner County Board of Commissioners (BOC) and the Banner County Board of Equalization (BOE) were conducted in violation of Nebraska's Open Meetings Act, Neb. Rev. Stat. §§ 84-1407 to 84-1414 (Reissue 1999 & Cum. Supp. 2004). The district court for Banner County, Nebraska, made the following findings: (1) The BOE failed to give adequate notice of any of its meetings from January 6 through August 16, 2005, and all such meetings of the BOE are void; (2) the BOC failed to give adequate notice of its meetings of July 5, 12, and 22, 2005, and such meetings were void; (3) the BOC failed to provide an agenda which gave reasonable notice that changing the posting requirement for meeting notices was an item to be considered at its February 21, 2005, meeting, and because such was a substantial violation, the action taken was void; (4) as a result of a discovery dispute, the defendants were ordered to pay attorney fees for the plaintiffs in the amount of $720 as a sanction; and (5) the plaintiffs were awarded attorney fees and expenses in the amount of $27,457.46.
The defendants are Gary Grubbs, Milo Sandberg, and Robert Gifford, Jr., who are members of both the BOC and the BOE. The BOC and the BOE are also named as defendants. The plaintiffs are seven married couples, four single individuals, and one corporation, all owning land in Banner County, Nebraska. The common thread among the plaintiffs is the taxation of their land. The defendants (hereinafter the appellants) have timely perfected their appeal to this court, and the plaintiffs (hereinafter the appellees) have filed a cross-appeal.

I. FACTUAL BACKGROUND
Although this voluminous record contains considerable testimony, it is largely composed of numerous exhibits. We have determined that the most efficient format for our decision is to include the appropriate narrative concerning the evidence and exhibits in the discussion of each assignment of error.

II. PROCEDURAL BACKGROUND
The appellees filed their lawsuit on August 30, 2005, and then filed an amended complaint on September 7. The date of the filing of the lawsuit (August 30) becomes important later in our analysis under the provisions of the Open Meetings Act. Trial was held on October 20 and 26 and November 8, 2006, and the district court's order was filed on April 5, 2007.

III. ASSIGNMENTS OF ERROR
The appellants allege, reordered, that the district court erred in (1) concluding that the BOC and the BOE are separate public bodies; (2) concluding that the BOE must comply with the Open Meetings Act in a manner separate and distinct from compliance by the BOC; (3) concluding that it had power to void entire meetings, rather than specific actions; (4) finding that the BOE failed to give adequate notice of its meetings of July 5, 12, and 22, 2005; (5) finding that the BOC failed to give adequate notice of its meetings of July 5, 12, and 22, 2005; (6) finding that the BOC failed to provide an agenda which gave reasonable notice of the matters to be considered at its meeting of February 21, 2005; (7) declaring all BOE meetings occurring between January 6 and August 16, 2005, inclusive, to be void; (8) declaring the February 21, March 5, and July 12 and 19, 2005, meetings of the BOC to be void; (9) awarding attorney fees and expenses on the merits of the case; (10) ordering the appellants to deliver public documents to the appellees' attorney; and (11) awarding attorney fees in the amount of $720 as a discovery sanction.
On cross-appeal, the appellees allege that the district court erred by (1) not automatically voiding all actions by the BOC and the BOE that occurred after May 2, 2005, when in violation of the Open Meetings Act; (2) not finding that the BOC substantially violated the Open Meetings Act by failing to find all "'emergency items'" added between January 6 and August 30, 2005, were not appropriate emergencies; (3) not finding that the BOC substantially violated the Open Meetings Act by failing to post notice of its meetings at the courthouse and the post office between January 6 and August 30, 2005; (4) not finding that the BOC substantially violated the Open Meetings Act by failing to post notice of its meetings at the Banner County School between January 6 and February 15, 2005; (5) not finding that the BOC substantially violated the Open Meetings Act by failing to post notice of its meetings at the Banner County School between February 16 and August 30, 2005; and (6) finding that posting public notice at only two locations for the BOC and the BOE is sufficient reasonable advance public notice, when the law requires posting at three locations for other public body meetings.

IV. STANDARD OF REVIEW
[1] Actions for relief under the public meetings laws are both tried by the trial court and reviewed by appellate courts as equitable cases, given that the relief sought is in the nature of a declaration that action taken in violation of the laws is void or voidable. Alderman v. County of Antelope, 11 Neb. App. 412, 653 N.W.2d 1 (2002).
On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. Id. See, also, Shoemaker v. Shoemaker, 275 Neb. 112, 745 N.W.2d 299 (2008). But when credible evidence is in conflict on material issues of fact, we consider and may give weight to the fact the trial court observed the witnesses and accepted one version of the facts over another. Id.

V. ANALYSIS

1. SAME ENTITY OR DISTINCT ENTITIES?
For efficiency's sake, there are several issues of law that we decide initially before moving on to the factual matters. The first of these issues is whether the BOC and the BOE are the same body or separate and distinct governmental bodies. This is a question of law, and when reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. McLeay v. Bergan Mercy Health Sys., 271 Neb. 602, 714 N.W.2d 7 (2006).
In 1943, the Nebraska Supreme Court stated that the two boards are "not one and the same entity," noting that the board of equalization was composed of the county board, the county assessor and the county clerk. Speer v. Kratzenstein, 143 Neb. 300, 304, 9 N.W.2d 306, 309 (1943) (Speer I). However, the statute defining the membership of the county board of equalization has been modified since Speer I was decided. Since 1953, Neb. Rev. Stat. § 77-1501 has stated that the county board constitutes the board of equalization. Thus, if the Speer I court meant to make the boards' membership the sole consideration for whether the board of commissioners and the board of equalization are the same body or separate and distinct bodies, the answer would be simple, because under the applicable statute, the members of the board of commissioners are the members of the board of equalization.
However, both Speer I and its modifying opinion of Speer v. Kratzenstein, 143 Neb. 310, 12 N.W.2d 360 (1943) (Speer II), devoted considerable effort to discussing the different duties and functions of the two boards. And the Speer I court found that a county board is without authority in the absence of statutory grant to perform the duties which are a part of the official duties of other officials or boards. Thus, it appears that function and duty played a significant part in determining that the two boards were in fact separate entities. Indeed, Speer II reasoned as follows:
A county is one of the public governmental subdivisions of a state, corporate in character . . ., created and organized for public political purposes connected with the administration of state government and specifically charged by law with the superintendence and administration of local affairs within its lawfully defined territorial boundaries. . . . Unless restrained by the Constitution the legislature may exercise control over county agencies and require such public duties and functions to be performed by them as fall within the general scope and objects of the county as a body corporate or politic. . . .
Both the county board and the board of equalization are such county agencies, required by statute and applicable authorities to perform certain well-defined public duties and functions in perfecting the administration of representative local government. They are separate entities, as is every other agency of the county . . . .
143 Neb. at 313, 12 N.W.2d at 362 (citations omitted) (emphasis supplied). We now examine the current "well-defined public duties and functions" of both county boards.
The powers of the county in this case are exercised by the BOC as provided by Neb. Rev. Stat. § 23-103 (Reissue 2007), which states:
The powers of the county as a body corporate or politic, shall be exercised by a county board, to wit: . . . in counties not under township organization by the board of county commissioners. In exercising the powers of the county . . . the board of county commissioners . . . may enter into compacts with the respective board or boards of another county or counties to exercise and carry out jointly any power or powers possessed by or conferred by law upon each board separately.
And each county, through its county board, has the power
(1) To purchase and hold the real and personal estate necessary for the use of the county; (2) to purchase, lease, lease with option to buy, acquire by gift or devise, and hold for the benefit of the county real estate sold by virtue of judicial proceedings in which the county is plaintiff or is interested; (3) to hold all real estate conveyed by general warranty deed to trustees in which the county is the beneficiary, whether the real estate is situated in the county so interested or in some other county or counties of the state; (4) to sell, convey, exchange, or lease any real or personal estate owned by the county in such manner and upon such terms and conditions as may be deemed in the best interest of the county; (5) to enter into compacts with other counties to exercise and carry out powers possessed by or conferred by law upon each county separately; and (6) to make all contracts and to do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers, except that no lease agreement for the rental of equipment shall be entered into if the consideration for all lease agreements for the fiscal year exceeds one-tenth of one percent of the total taxable value of the taxable property of the county.
Neb. Rev. Stat. § 23-104 (Reissue 2007).
The powers and duties of the county board are more specifically set forth in Neb. Rev. Stat. §§ 23-105 through 23-147 (Reissue 1997 & Cum. Supp. 2004). Included in those specific powers are that the county board has the power to take and have the care and custody of all the real and personal property owned by the county (§ 23-105); the county board has the power to manage the county funds and county business except as otherwise specifically provided (§ 23-106); and the county board shall have power as a board, or as individuals, to perform such other duties as may from time to time be imposed by general law (§ 23-113.03). The county board also has the authority to revise, alter, increase, or decrease general county budget documents. Neb. Rev. Stat. § 23-908 (Reissue 2007).
The board of equalization is an administrative agency of the county. Speer II. As stated previously, the county board constitutes the board of equalization; thus the two boards have the same membership. Neb. Rev. Stat. § 77-1501 (Reissue 2003). However, "[t]he board of equalization is simply what its name imports, a board for the equalization of values in certain cases. It possesses no powers save those conferred by statute." Brown v. Douglas County, 98 Neb. 299, 303, 152 N.W. 545, 546 (1915).
The county board of equalization is given statutory powers, all of which relate to the assessment of value and taxation of property within the county. The county board of equalization shall fairly and impartially equalize the values of all items of real property in the county so that all real property is assessed uniformly and proportionately. § 77-1501. The county board of equalization has the power to consider and correct the current year's assessment of any real property which has been undervalued or overvalued. Neb. Rev. Stat. § 77-1504 (Reissue 2003). The county board of equalization has the power to assess any omitted real property that was not reported to the county assessor pursuant to Neb. Rev. Stat. § 77-1318.01 (Reissue 2003) and to correct clerical errors as defined in Neb. Rev. Stat. § 77-128 (Reissue 2003) that result in a change of assessed value. Neb. Rev. Stat. § 77-1507 (Reissue 2003). Each year, the county board of equalization has the power to levy the necessary taxes for the current year if within the limit of the law and may also act to correct a clerical error which has resulted in the calculation of an incorrect levy by any entity otherwise authorized to certify a tax request under Neb. Rev. Stat. § 77-1601.02 (Reissue 2003). Neb. Rev. Stat. § 77-1601 (Reissue 2003).
Thus, while the county board of commissioners and the county board of equalization have the same membership, they have entirely different functions and duties, and clearly the powers of the board of commissioners are far more expansive, whereas the powers of the board of equalization are rather strictly limited. We hold that the duties and functions of the boards, rather than their membership, determine whether the board of commissioners and the board of equalization are the same body or separate and distinct bodies. We hold that they are the latter, because each of the two boards has its own "well-defined public duties and functions" which do not overlap between the two boards, and thus the BOC and the BOE are separate.

2. REQUIREMENTS FOR NOTICE, AGENDA, AND MINUTES
[8,9] Every meeting of a public body shall be open to the public. § 84-1408. Included in the definition of a public body are governing bodies of all agencies created by statute, or otherwise pursuant to law, of the executive department of the State of Nebraska, and all independent boards created by statute, or otherwise pursuant to law. § 84-1409(1). As stated previously, the county board of equalization is an administrative agency of the county, see, Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal., 243 Neb. 351, 500 N.W.2d 520 (1993); Speer II. As an administrative agency, a county board of equalization is itself a public body as defined by § 84-1409.
Public bodies are required to give advance publicized notice of their meetings. The notice requirements are set out in § 84-1411, which states in part:
(1) Each public body shall give reasonable advance publicized notice of the time and place of each meeting by a method designated by each public body and recorded in its minutes. . . . Such notice shall contain an agenda of subjects known at the time of the publicized notice or a statement that the agenda, which shall be kept continually current, shall be readily available for public inspection at the principal office of the public body during normal business hours.
(Emphasis supplied.)
The effect of this statute is that when an agenda is not made part of the notice, the citizen must go look at the agenda to determine if there are matters in which he or she is interested to determine if he or she wants to attend the meeting. On the other hand, a citizen who wishes to attend all meetings regardless of the agenda likely does not care what is on the agenda. "The open meetings laws should be broadly interpreted and liberally construed to obtain their objective of openness in favor of the public." State ex rel. Newman v. Columbus Township Bd., 15 Neb. App. 656, 660, 735 N.W.2d 399, 404 (2007). We find that it is not necessary that the BOC and the BOE post separate meeting notices, in the sense of two pieces of paper, when such notice contains only the time and place that the boards meet and directs an interested citizen to where the agendas for each board can be found. In this instance, if there is no agenda for the BOE, a procedure that is clearly permissible under § 84-1411, then the citizen is informed that nothing will be taken up by the BOE, absent an emergency matter, a topic we address in some detail later. We need not address the situation of a joint notice when specific agenda items are set forth in the notice, because all of the notices in this case direct citizens to the agenda on file, rather than including the agenda in the noticeas said, a perfectly legal situation. Thus, we limit our holding to the notice issue presented here, and hold that separate notices are not necessary when the notice states only the time and place that the boards meet and directs a citizen to where the agendas for each board can be found.
That said, we turn to the matter of agendas and conclude that a citizen should be able to discern which items are to be discussed and decided by each board. While a separate agenda for each board seems to be the better practice, we conclude that a "combined" agenda for both boards can pass muster under the Open Meetings Act, provided the agenda makes it clear which items are to be addressed by the BOC and which items are to be addressed by the BOE. We believe this holding is consistent with the objective of the Open Meetings Act, openness in favor of the public, see State ex rel. Newman v. Columbus Township Bd., supra, because the citizen can ascertain what each board intends to take up at the meeting.
Section 84-1413 provides in part:
(1) Each public body shall keep minutes of all meetings showing the time, place, members present and absent, and the substance of all matters discussed.
....
(4) The minutes of all meetings and evidence and documentation received or disclosed in open session shall be public records and open to public inspection during normal business hours.
(5) Minutes shall be written and available for inspection within ten working days or prior to the next convened meeting, whichever occurs earlier.
While having separate minutes for each board seems to be the better practice, like "combined" agendas, "combined" minutes can pass muster if it is clear which matters were addressed by the BOC and which matters were addressed by the BOE. Thus, as long as a citizen can readily discern which matters were taken up by each board, and the content requirements for minutes of § 84-1413(1) are met, "combined" minutes, in the sense of one document, are permissible under the Open Meetings Act. If the foregoing requirements are satisfied, the objective of the Open Meetings Actopenness in favor of the publicis met. See State ex rel. Newman v. Columbus Township Bd., supra.

3. UNLAWFUL ACTIONS VOID OR VOIDABLE
[17,18] When there has been a violation of the Open Meetings Act, a violation may be void or voidable within 1 year of the violation. § 84-1414. If the suit is commenced within 120 days of the meeting at which the violation occurred, the improper action is void. Id. If the suit is commenced more than 120 days but within 1 year of the meeting at which the violation occurred, the action is voidable, but only if it was a substantial violation of the Open Meetings Act. Id. In this case, the suit was filed August 30, 2005. Section 84-1414 provides in part:
(1) Any motion, resolution, rule, regulation, ordinance, or formal action of a public body made or taken in violation of the Open Meetings Act shall be declared void by the district court if the suit is commenced within one hundred twenty days of the meeting of the public body at which the alleged violation occurred. Any motion, resolution, rule, regulation, ordinance, or formal action of a public body made or taken in substantial violation of the Open Meetings Act shall be voidable by the district court if the suit is commenced more than one hundred twenty days after but within one year of the meeting of the public body in which the alleged violation occurred. A suit to void any final action shall be commenced within one year of the action.
Nebraska case law shows that voiding an entire meeting is a proper remedy for violations of the Open Meetings Act. See, Steenblock v. Elkhorn Township Bd., 245 Neb. 722, 515 N.W.2d 128 (1994) (finding that meeting was void and unlawful and failed to comply with requirements of public meetings law, because meeting was held in closed session, no member of public was allowed to attend, and meeting was held without reasonable advance notice for action which did not constitute emergency); Pokorny v. City of Schuyler, 202 Neb. 334, 275 N.W.2d 281 (1979) (effect of invalidity of meetings is same as if meetings had never occurred; no action authorized at those meetings could be sustained by reliance upon proceedings of council at those meetings).
More recently, this court has held that "once a meeting has been declared void pursuant to Nebraska's public meetings law, board members are prohibited from considering any information obtained at the illegal meeting." Alderman v. County of Antelope, 11 Neb. App. 412, 422-23, 653 N.W.2d 1, 9-10 (2002). The procedural and factual history of Alderman is not crucial to understanding our reasoning and holding, and thus in the interest of trying to author a manageable opinion, we dispense with such. Therefore, we quote the rationale and core holding of Alderman:
It is unthinkable that after a court has voided a board's action after determining that a meeting was held in violation of the public meetings law, the law would still allow members of that board to consider information obtained at that illegal meeting. To do so would completely contradict the stated intent of the public meetings law, which is to ensure that the formation of public policy is public business, not conducted in secret, and to allow citizens to exercise their democratic privilege of attending and speaking at meetings of public bodies. We simply do not know the content and extent of the information that was presented at the illegal meeting. Furthermore, official reports of closed meetings, "'even if issued, will seldom furnish a complete summary of the discussion leading to a particular course of action. . . .'" Grein v. Board of Education, 216 Neb. 158, 164, 343 N.W.2d 718, 722 (1984).
To allow board members to consider information obtained at a meeting that has been judicially determined to be in violation of the public meetings law would allow those board members to consider information that has not been brought before the public and thus would deprive citizens of both hearing said information and speaking either for or against it. Thus, we hold that once a meeting has been declared void pursuant to Nebraska's public meetings law, board members are prohibited from considering any information obtained at the illegal meeting.
11 Neb. App. at 422-23, 653 N.W.2d at 9. Accordingly, we hold that voiding an entire meeting is a proper remedy for violations of the Open Meetings Act, and we reject the appellants' contention to the contrary. With the foregoing holdings on core issues of law in place, we now turn to the specifics of this case.

4. MEETING AGENDA FOR FEBRUARY 15, 2005
The appellants argue that the district court erred in finding that the BOC failed to provide an agenda which gave reasonable notice of the matters to be considered at its meeting of February 21, 2005. After reviewing the appellants' argument in their brief, it is clear that they, and the district court, are actually referring to the meeting of February 15, 2005, and our analysis will relate to the February 15 meeting. Specifically, the appellants argue that the agenda for the February 15 meeting gave sufficient notice to the public that the board wanted to change the method of publicizing meetings.
On September 18, 2001, the BOC, in accordance with § 84-1411, designated its method of public notice as follows: "that the notices of meetings be published in the official newspaper and posted at the Harrisburg Post Office, the Banner County Courthouse, and the Banner County School." On the agenda for the February 15, 2005, meeting, new business item No. 5 stated, "Meeting notice." At the February 15 meeting, the BOC voted to stop posting notices at the school. Such action was recorded in the BOC's minutes, pursuant to § 84-1411. Following the February 15 meeting, notice of BOC and BOE meetings were no longer posted at the school. Thus, the question for us is whether an agenda item stating "Meeting notice" was sufficient to alert a citizen that the BOC would take up the method of providing notice of upcoming meetings and that a different sort of meeting notice could result.
In its current form, Neb. Rev. Stat. § 84-1411 (Reissue 2008) states in part that "[a]genda items shall be sufficiently descriptive to give the public reasonable notice of the matters to be considered at the meeting." However, that sentence was added to the statute effective July 14, 2006, and does not apply to the present case. Therefore, we look to what the law was in 2005, when the agenda for the February 15, 2005, meeting was made available.
In 2005, the law required that agendas give "some notice" of matters to be considered at the meeting. See Hansmeyer v. Nebraska Pub. Power Dist., 6 Neb. App. 889, 578 N.W.2d 476 (1998). In Hansmeyer, this court stated:
The purpose of the agenda requirement of the public meetings laws is to give "some notice of the matter to be considered at the meeting so that persons who are interested will know which matters will be for consideration at the meeting." Pokorny v. City of Schuyler, 202 Neb. 334, 339-40, 275 N.W.2d 281, 285 (1979). We have little hesitancy in concluding that an agenda item stating only "work order reports," which results in a public body's approving a $47 million, 3-year construction project traversing private land for nearly 100 miles with a major power transmission line, violated the notice requirements for an agenda under the public meetings laws. Whether intentional or not, the seemingly innocuous agenda item, "Work Order Reports," camouflaged the true nature of what would be discussed and voted upon and did not give the public meaningful notice so as to enable the public to observe and participate in the decisionmaking process. It does not even hint of the magnitude or nature of the matter to be taken up.
6 Neb. App. at 895-96, 578 N.W.2d at 481. On further hearing, the Nebraska Supreme Court affirmed "on the published opinion of the Nebraska Court of Appeals." Hansmeyer v. Nebraska Pub. Power Dist., 256 Neb. 1, 588 N.W.2d 589 (1999).
And while the BOC agenda item of "Meeting notice" is not ideal, it does provide "some notice" that the BOC would consider the subject of notice for meetings. In Hansmeyer, a matter of major import in terms of cost as well as impact on citizens and landowners was hidden by the nebulous and innocuous term "work order reports." Here, an interested citizen would have some notice of the topic involved, although in hindsight, a more informative description could have easily been written. But the standard is not "perfect notice," and in any event, the February 15, 2005, meeting occurred more than 120 days before suit was filed. Thus, to void the change in the method of notice, we would have to find the violation "substantial." We find that the agenda item stating "Meeting notice" was marginally sufficient under the Open Meetings Act to describe the action considered and takeni.e., that notice would no longer be posted at the schoolbut that if considered a violation, the violation was not substantial. As a result, because the minutes of the February 15 meeting were also proper, the BOC was/is no longer required to publish/post notice of meetings at the school.

5. POSTING OF NOTICES

(a) Posting Notice at Two Locations Instead of Three
[21] In their cross-appeal, the appellees argue that Neb. Rev. Stat. § 23-154 (Reissue 2007) sets out the requirements for notice of special sessions, which include "posting up notices in three public places in the county." The appellees then query, "If the board must post at three locations for a special session, why could the board post at only two locations for other regular sessions?" Brief for appellees on cross-appeal at 50. The answer is simply that the Legislature has not required posting at three locations for regular sessions of county boards, but has so required for special meetings. County board meetings are generally presumed to be regular meetings unless the challenging party carries the burden of proving otherwise. See Green v. Lancaster County, 61 Neb. 473, 85 N.W. 439 (1901). Clearly, as evidenced by the language of § 23-154, the Legislature knew how to draft a three-location posting requirement, but chose not to impose such a requirement for regular meetings. Therefore, the notice requirement for regular meetings is "by a method designated by each public body and recorded in its minutes." Neb. Rev. Stat. § 84-1411(1) (Cum. Supp. 2004). And following the February 15, 2005, meeting, that method included publishing in the official newspaper and posting at the Harrisburg post office and the Banner County courthouse. The appellees argue that posting at the school is the best posting because that is where residents of Banner County are most likely to go and see a notice. But the location of a posting is a policy decision for the BOC which we do not second-guess. This assignment of the appellees in their cross-appeal is without merit.

(b) Notice Actually Posted?
[22] In their cross-appeal, the appellees also argue that the district court erred in not finding that the BOC substantially violated the Open Meetings Act by failing to post notice of its meetings at (1) the courthouse and the post office between January 6 and August 30, 2005, and (2) the Banner County School between January 6 and February 15, 2005. The appellees argue that there was no evidence the BOC posted notice of its meetings anywhere. However, "[i]n the absence of evidence to the contrary, it may be presumed that public officers faithfully performed their official duties and that absent evidence showing misconduct or disregard of law, the regularity of official acts is presumed." KLH Retirement Planning v. Okwumuo, 263 Neb. 760, 764, 642 N.W.2d 801, 805 (2002).
The appellees argue that there is a general rule that "'what ought to be of record must be proved by the record,'" Barrett v. Hand, 158 Neb. 273, 282, 63 N.W.2d 185, 191 (1954), and that "[t]he omission of essential facts may not be supplied by presumptions," brief for appellees on cross-appeal at 49 (citing Smith v. City of Omaha, 49 Neb. 883, 69 N.W. 402 (1896), and City of Scottsbluf v. Kennedy, 141 Neb. 728, 4 N.W.2d 878 (1942)). The problem with the appellees' argument is that there is no requirement that the location of posted notices for each meeting be made of record by inclusion in the minutes. Section 84-1413 states that the minutes of all meetings must show the time, place, members present and absent, and the substance of all matters discussedthere is no requirement that a public body make a record of where notice was published or posted. Therefore, we can presume that the county clerk properly posted notice in accordance with the method adopted by the BOCat the courthouse and the post office between January 6 and August 30, 2005, as well as at the Banner County School prior to the change made on February 15, 2005.
The appellees then argue that "[o]nce [they] presented this testimony and raised the issue that the notices were not posted, the burden shifted to the BOC and BOE to show that notices were, in fact, posted in accordance with the September 2001 [and amended February 2005] adopted method and policy." Brief for appellees on cross-appeal at 48. This is not the law. Neb. Evid. R. 301, Neb. Rev. Stat. § 27-301 (Reissue 1995), states in relevant part that "a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Thus, the burden never shifts and was at all times on the appellees to show that it is more probable that the notices were not posted than probable that they were posted. The district court found that the appellees "did not meet [their] burden of proof concerning the adequacy of posting after February [15], 2005." And even though this is an equity case in which we review factual questions de novo, see Alderman v. County of Antelope, 11 Neb. App. 412, 653 N.W.2d 1 (2002), we still give weight to the fact that the trier of fact heard and observed the witnesses and accepted one version of the facts rather than another, see Shoemaker v. Shoemaker, 275 Neb. 112, 745 N.W.2d 299 (2008).
We accept the district court's factual finding regarding the adequacy of the postings of meeting notice after February 15, 2005, and we extend such finding to include the postings beginning January 6, 2005. The testimony from several witnesses that they did not happen to see the posted notices does not overcome the presumption that the county clerk posted the notices as required. These assignments of error in the appellees' cross-appeal are without merit.

6. MEETINGS OF JULY 5, 12, AND 22, 2005
The appellants argue that the district court erred in finding that the BOC and the BOE failed to give adequate notice of their meetings of July 5, 12, and 22, 2005. We find that there was not advance publicized notice of the July 12 and 22 meetings as required by § 84-1411, but that there was proper notice for the July 5 meeting.
We first address the July 12, 2005, meeting. The BOC and the BOE claim that the published minutes from the July 5 meeting which state that the next meeting of the BOE will be held on July 12 satisfy the notice requirement. We disagree. First, the minutes of the prior meeting do not meet the technical requirements of § 84-1411 for meeting notice, because they do not give the place and time of the future meeting, nor is there any mention of the agenda for the future meeting. Second, true notice of a meeting is not given by burying such in the minutes of a prior board proceeding, remembering that minutes and notice serve different purposesthe former to memorialize for the citizenry what has happened and the latter to tell them what is going to happen, as well as when and where. Citizens should not be made to sift through every past meeting's minutes relating to the BOC or the BOE to see whether a future meeting is mentioned. Placing notice of future meetings in minutes of a prior meeting does not comport with the objective of the Open Meetings Act, openness in favor of the public. See State ex rel. Newman v. Columbus Township Bd., 15 Neb. App. 656, 735 N.W.2d 399 (2007). Because the meeting occurred within the 120 days prior to the suit's being filed, the entire meeting of July 12 is void and board members are prohibited from considering any information obtained at the illegal meeting of July 12. See, § 84-1414; Alderman v. County of Antelope, supra.
As for the July 22, 2005, BOE meeting, it was a reconvening or continuation of the BOE meeting of July 19, but it nonetheless was a "meeting." No separate notice for the July 22 meeting was published. And,
[w]here no notice of particular meeting was ever posted at place designated and only public announcement of intention of board to reconvene was verbal announcement by chairman of board to persons present, there was not giving of notice as required by statute, either for separate meeting or for continuation of recessed meeting.
73 C.J.S. Public Administrative Law and Procedure § 34, oral announcement at 214 (2004) (citing Cooper v. Arizona Western College, Etc., 125 Ariz. 463, 610 P.2d 465 (1980)). We note that Arizona has a specific statute dealing with the recessing and resumption of a public meeting within 24 hours, which is permissible, if the notice for the original meeting includes the information about the when and where of a reconvened meeting "and if, prior to recessing, notice is publicly given as to the time and place of the resumption of the meeting or the method by which notice shall be publicly given." See Ariz. Rev. Stat. Ann. § 38-431.02(E) (2001). Under this statute, the Arizona Court of Appeals in Cooper, supra, held that the mere verbal announcement by the chairman of the board of the time and place that the recessed meeting would reconvene was not sufficient notice, thereby voiding the action taken at the reconvened session. While Nebraska does not have such a statute, § 84-1411 requires notice of "each" meeting, and construing that statute to accomplish openness in public meetings, we are compelled to hold that notice of recessed and reconvened meetings must be given in the same fashion as the original meeting, absent action by the Legislature permitting lesser notice. Thus, the July 22 meeting fails with respect to the notice and agenda requirements of § 84-1411. Because the meeting occurred within the 120 days prior to the suit's being filed, the entire meeting of July 22 is void and board members are prohibited from considering any information obtained at the illegal meeting of July 22. See, § 84-1414; Alderman v. County of Antelope, 11 Neb. App. 412, 653 N.W.2d 1 (2002).
Finally, we address the July 5, 2005, meeting. The publicized notice of the July 5 meeting was proper. The notice complied with the requirements of § 84-1411, giving the place and time of the meeting, as well as a statement that the agenda is kept current and can be found at the county clerk's office during normal business hours. Nothing more was required.

7. MEETINGS OF JUNE 7, 21, AND 29, 2005
[27] In their cross-appeal, the appellees argue that the minutes of June 7, 21, and 29, 2005, were not timely published and that all actions at those meetings should automatically be voided because they occurred within the 120 days prior to the suit's being filed. The appellees cite § 23-122 in support of their argument. Section 23-122, which is applicable to Banner County, states:
The county board of all counties having a population of less than one hundred fifty thousand inhabitants shall cause to be published, within ten working days after the close of each annual, regular, or special meeting of the board, a brief statement of the proceedings thereof which shall also include the amount of each claim allowed, the purpose of the claim, and the name of the claimant . . . .
The BOC was required to "publish" minutes within 10 working days, which it did notminutes for the June 7 meeting were published on June 23, and minutes for the June 21 and 29 meetings were published on July 21. However, § 84-1414 only makes violations of the Open Meetings Act void or voidable. And § 84-1407 states that the Open Meetings Act includes §§ 84-1407 to 84-1414. Thus, a violation of § 23-122 is not a violation of the Open Meetings Act, and is thus not void or voidable under § 84-1414.
The Open Meetings Act does require that minutes be written and available for inspection within 10 working days or prior to the next convened meeting, whichever occurs earlier. § 84-1413(5). Even though it is clear that the minutes to the June 7, 21, and 29, 2005, meetings were not "published" within 10 days as required by § 23-122, we have found no evidence, nor have the appellees cited us to such in the record, that the minutes were not "written and available" within 10 days or prior to the next convened meeting, which is all that the Open Meetings Act requires under § 84-1413(5). And "[i]n the absence of evidence to the contrary, it may be presumed that public officers faithfully performed their official duties and that absent evidence showing misconduct or disregard of law, the regularity of official acts is presumed." KLH Retirement Planning v. Okwumuo, 263 Neb. 760, 764, 642 N.W.2d 801, 805 (2002). This assignment is without merit.

8. REMAINDER OF MEETINGS FROM JANUARY 6 TO AUGUST 16, 2005
Other than the July 12 and 22, 2005, BOC and BOE meetings that we have specifically found void in this opinion, the remainder of BOC and BOE meetings from January 6 to August 16, 2005, were generally conducted in compliance with the Open Meetings Act. We have reviewed the record and determined that such meetings met the notice requirements of § 84-1411 and that there were proper agendas and minutes. Therefore, to the extent that the district court determined that BOC and BOE meetings other than those of July 12 and 22 were voidand we note that the district court specified meetings through August 16, while the cross-appeal uses the date of August 30we reverse the district court's order voiding BOC and BOE meetings other than those of July 12 and 22.

9. EMERGENCY ITEMS
In their cross-appeal, the appellees argue that the "emergency items" added to meetings without being listed on the agenda between January 6 and August 30, 2005, were not appropriate emergencies and that thus the district court erred in not finding that the BOC substantially violated the Open Meetings Act in this regard by taking up and acting upon nonagenda items under the guise of emergencies.
The public body shall have the right to modify the agenda to include items of an "emergency nature" at public meetings. See § 84-1411(1). An emergency has been defined as "'"[a]ny event or occasional combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency; a sudden or unexpected happening; an unforeseen occurrence or condition."'" Steenblock v. Elkhorn Township Bd., 245 Neb. 722, 726, 515 N.W.2d 128, 130 (1994). Each public body shall keep minutes of all meetings showing the time, place, members present and absent, and the substance of all matters discussed. § 84-1413(1). We now look at each of the eight emergency items challenged by the appellees in their brief on cross-appeal to determine whether such items violated the Open Meetings Act, and if so, whether the violation was substantial, when the matter was dealt with more than 120 days before the filing of the lawsuit on August 30, 2005.

(a) Personnel Letter
On March 1, 2005, the BOC authorized the county attorney to prepare a letter to employees explaining the complaint system. This item did not appear on the agenda prior to the March 1 meeting. However, in that meeting's minutes, the following entry appears:
NB #2PersonnelThe admonishments and reprimands placed in personnel files in previous years were discussed. Grubbs made a motion that employees be allowed to review their files with the county attorney and Chairman Sandberg with the right to purge complaints. Grubbs withdrew the motion. The county attorney is to prepare a letter to the employees explaining the complaint system and any possible recourse available to employees.
Reading this entry, the minutes do not contain any explanation as to why this topic was an emergency, nor can we infer why it was an emergency from the minute entry. There is no explanation as to why this action could not wait until the next BOC meeting on March 15, 2005, at which time it could be properly placed on the agenda in advance of the meeting. Because there was no indication, either explicitly or implicitly, as to why this item required immediate action or was of pressing necessity, it was not an "emergency" that could be taken up without first appearing on the agenda. That said, the matter discussed and the action was inconsequential insofar as we can tell. Because the action occurred more than 120 days but within 1 year of this suit's being filed, the action is voidable, but only if it was a substantial violation of the Open Meetings Act. See § 84-1414. We have no hesitancy in concluding that the matter was insubstantial, and thus not voidable.

(b) Homeland Security Resolution
On March 1, 2005, the BOC approved a homeland security resolution. This item did not appear on the agenda prior to the March 1 meeting. However, in that meeting's minutes, the following entry appears:
NB #3Resolution of Support for Homeland Security GrantsSherry Blaha, Emergency Manager, sent a letter describing the grants for Banner County that had been submitted and ask[ed] that the board review the grants and sign a resolution of support. Gifford made a motion that the resolution be approved. Second by Grubbs. Roll call vote: Grubbs, yes; Gifford, yes; M Sandberg, yes. Grubbs made a motion to authorize the chairman to sign. Second by Gifford. Roll call vote: Grubbs, yes; Gifford, yes; M Sandberg, yes.
The minutes do not explicitly state why this item was an emergency, nor can we infer why it was an emergency. Noting that the grants had already been submitted, there is no explanation as to why this action, simply requesting a resolution of support, could not wait until the next BOC meeting on March 15, at which time it could be properly placed on the agenda in advance of the meeting. That said, on the record before us, the matter discussed and the action taken without proper notice on an agenda can hardly be classified as a substantial violation of the Open Meetings Act. This assignment of error from the cross-appeal is without merit.

(c) Transfer of Funds
On March 15, 2005, the BOC approved a resolution transferring $25,000 from the inheritance tax fund to the general fund. This item did not appear on the agenda prior to the March 15 meeting. However, in that meeting's minutes, the following entry appears: "NB #7Transfer of Funds Grubbs made a motion to approve the resolution transferring $25,000 from the inheritance tax fund to the general fund. Second by Gifford. Roll call vote: Grubbs, yes; Gifford, yes; M Sandberg, yes."
Reading this entry, the minutes do not explicitly state why this item was an emergency, nor can we infer why it was an emergency. There is no explanation as to why the funds needed to be transferred, nor is there an explanation as to why they needed to be transferred at that time. We cannot discern from this entry as to why the transfer of funds could not wait until the next BOC meeting on April 5, 2005, at which time it could be properly placed on the agenda in advance of the meeting. Because there was no indication, either explicitly or implicitly, as to why this item required immediate action, it was not an appropriate emergency. Because the action occurred more than 120 days but within 1 year of the suit's being filed, the action is voidable, but only if it was a substantial violation of the Open Meetings Act. See § 84-1414. Because this item involved the handling of public money, a key portion of the BOC duties, we conclude that doing so without prior notice via an agenda is a substantial violation of the Open Meetings Act, and thus the action taken is void. When reaching this conclusion, we cannot help noting the ease of compliance, given that under § 84-1411, the BOC agenda can be amended as late as 24 hours prior to the meeting.

(d) Letter Concerning Wind Energy
On April 5, 2005, the BOC authorized the chairman to sign and send a letter to local energy companies concerning wind energy. This item did not appear on the agenda prior to the April 5 meeting. However, in that meeting's minutes, the following entry appears:
NB #6Letter concerning wind energyRon Moore has drafted a letter concerning the proposed wind energy project. Grubbs made a motion to authorize the chairman to sign this letter and send it to all local energy companies. Second by Gifford. Roll call vote: Grubbs, yes; Gifford, yes; M Sandberg, yes.
Reading this entry, the minutes do not explicitly state why this item was an emergency, nor can we infer why it was an emergencyand moreover, a reader of the minutes would have no idea what the "wind energy project" is, nor what the chairman's letter would say, and importantly, whether public funds are involved. There is no explanation as to why this action could not wait until the next BOC meeting on April 19, 2005, at which time it could be properly placed on the agenda in advance of the meeting. Thus, this item and action taken was not an appropriate emergency, and such is voidable if it was a substantial violation of the Open Meetings Act. See § 84-1414. We find that such action was a substantial violation and, thus, void the action, noting that the letter has undoubtedly been sent and that the BOC can hardly "unsend" the letter. Thus, while the assignment of error is well taken, it ultimately serves only to remind the BOC of the requirements of the Open Meetings Act.

(e) Grant for Pagers
On May 3, 2005, the BOC voted to accept a $24,184 grant to purchase pagers for the fire department. This item did not appear on the agenda prior to the May 3 meeting. However, in that meeting's minutes, the following entry appears:
NB # 5GrantSherry Blaha met with the board to discuss the grant of $24,184.00 recently awarded for the purchase of 25 pagers for the fire department. Gifford made a motion to accept this grant and to authorize the chairman to sign the agreement. Second by Grubbs. Roll call vote: Grubbs, yes; Gifford, yes; M Sandberg, yes.
This entry on its face shows the substance of the matter discussed. It is not a stretch to infer that the pagers would be a "pressing necessity," because it would enable the firefighters of Banner County to perform their very important duties more efficiently. This was an appropriate emergency, and it did not involve the expenditure of the Banner County taxpayers' funds.

(f) Waiver of Notification
On May 17, 2005, the BOC voted to grant a waiver of notification of subdivisions where the tax refund was less than $200. This item did not appear on the agenda prior to the May 17 meeting. However, in that meeting's minutes, the following entry appears: "NB #8Waiver of notification of subdivisions of refund less than $200.00Gifford made a motion to grant a waiver of notification of subdivisions where the tax refund was less than $200.00. Second by Grubbs. Roll call vote: Grubbs, yes; Gifford, yes, M Sandberg, yes."
Reading this entry, we are not sure what this matter was really aboutWhat notification was being waived? Who was getting the refunds, and how extensive were the refunds? Why is it an emergency? The minutes do not explicitly state why this item was an emergency, nor can we infer why it was an emergency, as we could with the pagers above. Because there was no indication, either explicitly or implicitly, as to why this item required immediate action, it was not an appropriate emergency. Because the action occurred within the 120 days prior to the suit's being filed, the action is void. See § 84-1414.
(g) Constitution With Cooperative Extension Service On June 29, 2005, the BOC adopted a constitution with "University of Nebraska Cooperative Extension Service." This item did not appear on the agenda prior to the June 29 meeting. However, in that meeting's minutes, the following entry appears:
NB #3Approval of change to constitution with University of Nebraska Cooperative Extension Service  Aaron Berger, Extension Educator, met with the board to explain the proposed changes in combining Cheyenne, Kimball and Banner County extension boards. Gifford made a motion to adopt the constitution with University of Nebraska Cooperative Extension Service. Second by Grubbs. Roll call vote: Grubbs, yes; Gifford, yes; M Sandberg, yes.
Reading this entry, the minutes do not explicitly state why this item was an emergency, nor can we infer why it was an emergency. Because there was no indication, either explicitly or implicitly, as to why this item required immediate action, it was not an appropriate emergency. Because the action occurred within the 120 days prior to the suit's being filed, the action is void. See § 84-1414.

(h) Road Resolution
On June 29, 2005, the BOC signed a road closing that was approved at a prior meeting. This item did not appear on the agenda prior to the June 29 meeting. However, in that meeting's minutes, the following entry appears: "NB #4Signing of road resolutionThe road closing approved at a prior meeting was signed."
Clearly, the information in this entry is short on detail, such as which road, which prior meeting, and how the road would be closed. But, we do note that at the immediately preceding meeting on June 21, 2005, a road closing was requested by an adjacent landowner because of "vandalism at the old home site." Here, all the board did was agree to administratively effectuate a prior decision, and in that context, we agree the action taken was of pressing necessity. This assignment of error is without merit.

10. DISCOVERY ORDER AND DISCOVERY SANCTION
The appellants argue that the district court erred in ordering them to deliver public documents to the appellees' attorney. In its order, the district court said: "The Defendants are in control and responsible for the accuracy and availability of the requested items. As the Defendants are parties to this action it is their responsibility to have the items available to the Plaintiffs at the Plaintiffs' attorneys [sic] office for inspection and reproduction." The question for us is whether this was a proper order.
It does not appear that the Nebraska Supreme Court has ruled on the question of the place of inspection of documents. However, "[i]nasmuch as the Nebraska Rules of Discovery are generally and substantially patterned after the corresponding discovery rules in the Federal Rules of Civil Procedure, Nebraska courts will look to federal decisions interpreting corresponding federal rules for guidance in construing similar Nebraska rules." Gernstein v. Lake, 259 Neb. 479, 480, 610 N.W.2d 714, 716 (2000). And "under [Fed. R. Civ. P.] 34, a responding party need only make requested documents available for inspection and copying; it need not pay the copying costs." Cardenas v. Dorel Juvenile Group, Inc., 230 F.R.D. 611, 619-20 (D. Kan. 2005) (emphasis in original). Additionally, an order for discovery of writings "should generally provide that the inspection should be made at defendant's place of business without removal," and "[t]he court will not order writings to be taken from one party and delivered to his adversary." 27 C.J.S. Discovery § 108 at 197 (1999).
Applying these concepts, we conclude that the district court's order requiring the appellants to make the requested items available to the appellees at the office of their attorney for inspection and copying was inconsistent with the operative discovery rules, and therefore an abuse of discretion. Moreover, to the extent that any of the requested documents were public records, "[a]s a general rule, under statutes authorizing discovery no discovery can be required of documents of public record, as they are equally accessible to all parties. . . ." 27 C.J.S., supra, § 91 at 177. See, also, Securities and Exchange Com'n v. Samuel H. Sloan & Co., 369 F. Supp. 994 (S.D.N.Y. 1973).

11. SUMMARY OF OUR FINDINGS
Before we address the issue of attorney fees, we think it appropriate to summarize our conclusions and holdings made in this opinion.
The BOC and the BOE are separate and distinct bodies, and each is required to comply with the Open Meetings Actalthough this does not mean separate pieces of paper are required. The BOC and the BOE did not have to post separate notices under the circumstances of this case, because such notices contained only the time and place that the boards met and directed interested citizens to where the agendas for each board could be found. The combined agendas and minutes of the BOC and the BOE were valid because they clearly stated which items and issues each board would or did address.
We find that the agenda for the February 15, 2005, meeting, which removed the requirement that meeting notices be posted at the school, was marginally adequate, but even if considered a violation, the violation was not substantial. Therefore, we reverse the decision of the district court on this issue.
We find that there was not adequate notice of the July 12 and 22, 2005, meetings of the BOC and the BOE. Because the meetings occurred within the 120 days prior to the lawsuit's being filed, the meetings are void in their entirety. Thus, we affirm the district court's findings in this regard.
We find that there was adequate notice of the July 5, 2005, meeting of the BOC and the BOE. Thus, we reverse the district court's findings that the notice was inadequate and that the meeting was void.
We affirm the district court's findings that the appellees did not meet their burden of proving that notices were not posted as required for all BOC and BOE meetings from January through August 2005. We also find that the appellees did not meet their burden in proving that minutes from the BOC and BOE meetings of June 7, 21, and 29, 2005, were not "written and available" within the required time, distinguishing that term from "publishing" the minutes.
We find that other than the July 12 and 22, 2005, meetings that we have specifically found void in this opinion, the remainder of the BOC and BOE meetings from January 6 to August 16, 2005, were generally valid and did not involve voidable actions. We reverse the order of the district court to the extent that it found otherwise.
We find that the following items addressed by the BOC were appropriate emergency items or not substantial violations of the Open Meetings Act: (1) personnel letter of March 1, 2005; (2) homeland security resolution of March 1, 2005; (3) grant for pagers of May 3, 2005; and (4) road resolution of June 29, 2005. Thus, we affirm the district court's findings with regard to these items.
We find that the following were not appropriate emergency items addressed by the BOC: (1) transfer of funds of March 15, 2005; (2) letter concerning wind energy of April 5, 2005; (3) waiver of notification of May 17, 2005; and (4) constitution with cooperative extension service of June 29, 2005. We find that actions taken on these matters are void, and thus we reverse the district court's findings with regard to these items.
We find that the district court's order regarding the production of documents was incorrect and an abuse of discretion. We also find that the district court's award of attorney fees in the amount of $720 as a discovery sanction was unwarranted and improper, and we vacate and set aside such award.

12. ATTORNEY FEES
[33-35] The appellants argue that the district court erred in awarding the appellees attorney fees and expenses in the amount of $27,457.46. "As a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees." Alderman v. County of Antelope, 11 Neb. App. 412, 424, 653 N.W.2d 1, 10 (2002). In the instant case, the relevant statutory provision is § 84-1414(3), which declares that citizens of this state may commence actions in district court for the purpose of requiring compliance with or preventing violations of the public meetings laws or for the purpose of declaring an action of a public body void. Section 84-1414(3) also provides that "[t]he court may order payment of reasonable attorney's fees and court costs to a successful plaintiff in a suit brought under this section." "The fact that the [plaintiffs] did not accomplish the full objective of their lawsuit does not prevent them from being `successful plaintiffs,' but, rather, goes to the extent of an award for attorney fees, as the results obtained are an appropriate consideration on that issue." Hansmeyer v. Nebraska Pub. Power Dist., 6 Neb. App. 889, 903, 578 N.W.2d 476, 485 (1998).
[36] Discretionary decisions of the trial courts on attorney fees will be upheld on appeal absent a showing of abuse of discretion. Alderman v. County of Antelope, supra. However, in this case, given the substantial change in the district court's decision we have made, the district court's award of fees and costs must be carefully scrutinized. That said, it is worthy of note that the court in Airport Inn v. Nebraska Equal Opp. Comm., 217 Neb. 852, 863, 353 N.W.2d 727, 734 (1984), in the portion of its opinion dealing with whether attorney fees should be awarded, acknowledged that "success can sometimes be measured in small ways."
[37] As stated above, we found that only the July 12 and 22, 2005, meetings of the Banner County BOC and BOE were void. Insofar as we can discern, the various appellees were personally interested only in the subject of assessments of value of their properties. The following appellees did not have their property assessments addressed at the July 12 and/or 22, 2005, meetings of the BOE: Nile and Roma Gene Greathouse, Robert and Betty Newell, Scott and Lita Delcamp, Don L. Lease II, Joe Singleton, Charles Singleton, and James C. McGowan. Thus, these appellees were unaffected by the voiding of those meetings, and the outcome of this litigation only tangentially affects them, remembering that "[t]he purpose of the open meeting law is to insure that public policy is formulated at open meetings of the bodies to which the law is applicable." Pokorny v. City of Schuyler, 202 Neb. 334, 339, 275 N.W.2d 281, 284 (1979). We include this quote from Pokorny because the matter of these taxpayers' property valuations is not really public policy, because the Legislature has already determined that their real estate will be taxed based on valuationthat is, the public policy of the State and these meetings did not affect the formulation of that policy. Rather, the meetings at issue dealt with the administration and application of that public policy to individual landowners. And those landowners, despite some imperfections in the way the county government of this sparsely populated rural county operated with respect to notice and agendas of its meetings, were able to participate and be heard on the matters which concerned them. This observation impacts the award of costs and fees, because in our view, it goes to the issue of "results obtained." It is apparent from our summary of what we have affirmed and what we have reversed from the district court's decision that we have substantially altered, and materially lessened, the positive "results obtained." Additionally, it is not insignificant to the question of the award of fees and costs that the governmental body can "repair" action taken at defective meetings. In Pokorny, the court said:
It is a general principle of law that where a defect occurs in proceedings of a governmental body, ordinarily the defect may be cured by new proceedings commencing at the point where the defect occurred. See 5 McQuillin, Municipal Corporations, § 16.93, p. 299; 56 Am. Jur. 2d, Municipal Corporations, § 508, p. 559, § 510, p. 560; 63 C. J. S. Municipal Corporations, § 1009, p. 597. We think this principle is applicable here.
The effect of the invalidity of the meetings of March 16 and March 25 is the same as if the meetings had never occurred. No action authorized at those meetings could be sustained by reliance upon the proceedings of the council at those meetings. This does not mean the council could not authorize the purchase of the land at a subsequent meeting which complied with all statutory requirements.
202 Neb. at 341, 275 N.W.2d at 285. Thus, the result obtained here is not that the appellees whose property assessments were voided escape taxation of their property, assuming the BOE takes up these matters anew with proper notice and agendas. That said, the results obtained affect all Banner County citizens by giving real meaning to the requirement for open and transparent government, which is the overall purpose of the Open Meetings Act, and in that sense, the "results obtained" have a larger benefit than their impact on the various appellees, and thus an award of costs and fees to some extent is appropriate.
The following appellees had their property assessments addressed at the voided meetings: Billie and David Wolf, Lane and Robin Darnall, Gary and Emilie Darnall, Robert and Lisa Brenner, and Darnall Ranch, Inc. Thus, these appellees were affected by the voiding of those meetings and can be considered "successful litigants." We turn to how these appellees were affected by the voiding of the two meetings, so that the results of our decision are clear, and so that the matter of "results obtained" within the context of the appellants' challenge to the award of fees and costs by the district court can be analyzed.
Lane and Robin Darnall presented their protest at the BOE's July 12, 2005, meeting, which we have declared void. And while the BOE's findings were made at the July 19 meeting, which was not a void meeting, the BOE could not make its finding in reliance on any information obtained at the illegal July 12 meeting, see Alderman v. County of Antelope, 11 Neb. App. 412, 653 N.W.2d 1 (2002), and we think it is a reasonable inference that there was such reliance.
Gary and Emilie Darnall and Darnall Ranch presented their six protests at the BOE's July 12, 2005, meeting, which we have declared void, and again the board members are prohibited from considering any information obtained at the illegal meeting. See id. The BOE made findings with regard to two of the Darnalls' protests at the July 19 meeting, which, as stated previously, was not a void meeting. However, as stated above, the BOE could not make its July 19 findings in reliance on any information obtained at the illegal July 12 meeting. See id. The BOE made findings with regard to the Darnalls' four remaining protests at the meeting on July 22. We have found that the July 22 meeting is void, and thus so are the BOE's findings made that day. Thus, the BOE's actions regarding all six Darnall protests are hereby voided.
Robert and Lisa Brenner presented their protest at the BOE's July 12, 2005, meeting, which we have declared void. Thus, the board members are prohibited from considering any information obtained at the illegal meeting. See id. The BOE made findings with regard to the Brenners' protests at the meeting on July 22. We have found that the July 22 meeting is void, and thus so are the BOE's findings made that day. Therefore, the BOE's findings on the Brenner protest are hereby voided.
Billie and David Wolf presented their protest to the BOE at its meeting on July 19, 2005, and the BOE made findings that dayremembering that the July 19 meeting was a valid and proper meeting. However, the BOE voted to amend its findings at the July 22 meeting. We have found that the July 22 meeting is void, and thus, so are the BOE's July 22 amendments regarding the Wolfs' assessmenteven though such were favorable to the Wolfs. Therefore, the findings made concerning the Wolf protest on July 19 are valid, but the amendment thereto is not. In summary, it is important to note that despite the flawed notice, all landowners whose assessments are void as a consequence of this litigation did, in fact, appear and present their protests to the assessments.
We are aware of the doctrine that "any person who has notice of a meeting and attends the meeting must object specifically to the lack of public notice at the meeting, or that person will be held to have waived the right to object on that ground at a later date." Wasikowski v. Nebraska Quality Jobs Bd., 264 Neb. 403, 417, 648 N.W.2d 756, 767 (2002). The district court found that the appellees did not waive their objection, and we find that there is evidence in the record to support such finding. Furthermore, the appellants did not specifically assign as error the failure of the district court to find that the appellees waived their objection on notice grounds. "To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error." Scurlocke v. Hansen, 268 Neb. 548, 551, 684 N.W.2d 565, 568 (2004).
In the trial court, counsel for the appellees submitted an accounting of time spent on this case, asserting a fair and reasonable hourly rate of $150 per hour, and $60 per hour for paralegal time, with a total of 210 hours equaling $28,899. Counsel also sought reimbursement of $3,326.46 for expensesthe majority of which was for the copying of documents charged at 25 cents a page. After credit for the award of $720 in fees awarded by the district court and a $4,000 "courtesy discount," counsel sought $27,457.46, which the trial court awarded.
Concerning fees, the appellants argue, citing Hansmeyer v. Nebraska Pub. Power Dist., 6 Neb. App. 889, 578 N.W.2d 476 (1998), that if the results obtained at trial are reduced on appeal, then the attorney fees must be likewise reduced. This proposition is sound and logical. The appellees' counsel (who was a plaintiff himself) received an award of all that he requested from the district court. But, on appellate review, we have reversed much of the results obtained at trial. Moreover, the "concrete result" of this case is likely to come to little or nothing, in that it is permissible to "repair" voided actions during new proceedings. Thus, in a very real sense, this extensive and protracted litigation accomplished only a reminder to local government that compliance with the Open Meetings Act is important to the ideal of open and transparent governance, and that to violate the act's provisions carries a substantial costcertainly in litigation costs. In other words, this litigation is a victory for open and transparent governance, but the victory is not nearly of the magnitude handed down by the district court. And the fee award must reflect these considerations and the outcome on appeal. Therefore, while agreeing that fees and costs should be awarded at the trial level, we reduce the district court's award by $10,000 and thereby award the sum of $17,457.46.
Counsel for the appellees has filed a motion for fees and costs in this court. Without repeating what we have done, we believe it fair to say that in this appellate proceeding, including the appellees' cross-appeal, the appellees lost far more than was upheld, and their cross-appeal was largely unsuccessful. An award of fees, here as in the trial court, is discretionary. We decline to award fees and costs and, therefore, overrule the appellees' motion for an award of such.
AFFIRMED IN PART, REVERSED IN PART, AND IN PART VACATED AND SET ASIDE.